PEOPLE v. READING.

1. CRIMINAL LAW—CONSPIRACY TO OBSTRUCT JUSTICE—EVIDENCE.
   In prosecution of former city mayor for conspiracy to obstruct justice, verdict of conviction as to appellant was sustained by evidence showing his receipt of funds collected from gambling operations by go-betweens; hence it was not error on part of trial judge to refuse to direct a verdict of not guilty on his behalf.

2. SAME—CONSPIRACY—EXCLUSION OF EXHIBITS.
   In prosecution of former city mayor for conspiracy to obstruct justice in which certain police officials were implicated, exclusion of context of certain communications appellant had received from the city police commissioner was not reversible error, where testimony was admitted which clearly revealed the purport of the excluded exhibits.

3. SAME—CONSPIRACY—OTHER OFFENSES—CROSS-EXAMINATION OF DEFENDANT.
   Where defendant, a former city mayor, took the stand at his trial for criminal conspiracy and voluntarily testified as to his conviction of a criminal charge in the Federal court on direct examination, it was not error to receive a copy of the Federal indictment in evidence on cross-examination and to

read to the jury the counts to which defendant had pleaded guilty in order to show by the best evidence that he had been charged with making a dishonest disclosure in order to effect a fraudulent settlement of obligations to a bank rather than a seemingly inadvertent one as disclosed by direct examination.

4. SAME—REMARKS OF COURT—RECEPTION OF EVIDENCE.

During the course of a lengthy trial of many defendants, including appellant herein, a former city mayor, for conspiracy to obstruct justice, court's improper remark incident to reception in evidence of a written exhibit on cross-examination of defendant, which remark was immediately stricken, did not constitute denial of motion for mistrial therefor reversible error.

5. SAME—MISTRIAL—REMARKS OF PROSECUTING ATTORNEY.

Assignment of error upon refusal of motion for mistrial because of prejudicial remarks of prosecuting attorney in course of lengthy and strenuously contested prosecution for conspiracy to obstruct justice *held,* without merit.

6. SAME—ADDITIONAL INSTRUCTIONS—PRESENCE OF DEFENDANT.

The giving of additional instructions to jury upon its request therefor while it was deliberating upon a criminal prosecution was not error merely because defendant was not present at that time where he was at liberty on bond and voluntarily absented himself and only certain portions of charge previously given were read verbatim and without any additions or changes.

7. CONSPIRACY—OTHER OFFENSES—INTENT—EVIDENCE.

In prosecution of former city mayor for conspiracy to obstruct justice incident to gambling operations known as numbers, the trial court did not commit reversible error in admitting evidence of overt acts of an alleged separate and distinct conspiracy and of acts occurring prior to or subsequent to the time of the running of the conspiracy alleged in the indictment where the circumstances were such that the matter of intent of defendant in receiving funds from other parties was material to the case against him since such testimony bore on the matter of intent.

8. SAME—CROSS-EXAMINATION—IMMUNITY.

Claimed error in refusal of trial court to permit cross-examination of people's witnesses as to statements made by them before so-called one-man grand jury out of whose investigation arose instant prosecution of a number of defendants, including

former city mayor, for conspiracy to obstruct justice and also in granting State witnesses who were previously granted immunity the constitutional privilege of refusing to state their occupation and means of livelihood was without merit (Const. 1908; art. 2, § 16; 3 Comp. Laws 1929, § 17220).

9. Same—Mayor—Police Officers—Rules and Regulations—Evidence.

The receipt in evidence of rules and regulations of city police department did not infringe the city mayor's right to a fair trial on charge of conspiracy to obstruct justice where several of the city's police officers were codefendants, the rules and regulations were material and competent evidence of their duties, the trial court carefully stated application to be made of testimony relative to the rules, and conspiracy charged involved his prevention of performance of official duties of police officers.

10. Same—Unlawful Search and Seizure—Other Evidence.

While articles obtained by an unlawful search and seizure of a codefendant's home were properly suppressed in prosecution of former mayor for conspiracy to obstruct justice, it was not error to receive other competent testimony as to certain facts and circumstances which might also have been disclosed by such articles.

11. Criminal Law—Conspiracy—Evidence—Grand Jury.

Contention that trial court committed reversible error in admitting in evidence, in prosecution for conspiracy to obstruct justice, statements of defendants made to members of the grand jury staff in the office of the grand jury out of whose investigations the instant prosecution arose *held*, not well founded under record and brief presented.

12. Same—One-Man Grand Jury—Self-Incrimination—Immunity.

Defendant in prosecution for conspiracy to obstruct justice was not entitled to have information quashed on the ground that he, as a subpoenaed witness before a one-man grand jury, had previously testified pertaining to matters covered by the information, where it does not appear that he had obtained statutory immunity from prosecution as to matters concerning which he gave self-incriminating testimony (3 Comp. Laws 1929, § 17220).

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted October 14, 1943. (Docket No.

85, Calendar No. 42,084.)  Decided December 29, 1943.

Richard W. Reading was convicted of conspiracy to obstruct justice.  Affirmed.

*Frank G. Schemanske* and *Guy W. Moore,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Thomas A. Kenney* and *Daniel J. O'Hara,* Assistants Attorney General, for the people.

NORTH, J.  On trial by jury in the circuit court for the county of Wayne the defendant, Richard W. Reading, formerly mayor of Detroit, was convicted of wilfully and corruptly conspiring with several other defendants named and with other persons "to procure the wilful, intentional and corrupt failure, omission and neglect on the part of" certain public officials named "to perform their respective official duties as public officials of said county (of Wayne) and city (of Detroit) respectively in the enforcement of the criminal laws of the State relating to lotteries."  His motion for a new trial was denied, and a sentence committing the defendant to the penitentiary for a term of years was imposed.  He has appealed and incident thereto has noted in his brief 14 grounds or reasons in support of his claim that his conviction should be set aside.

John W. Roxborough, a codefendant, has also appealed, and the opinion of this Court disposing of the *Roxborough* appeal is handed down herewith, *ante,* 575.  The facts and circumstances which gave rise to the prosecution of Reading and his codefendants need not be detailed in this opinion because

they sufficiently appear in the opinion in the *Roxborough* appeal and the reported cases referred to in the *Roxborough* opinion. Notwithstanding numerous defendants were jointly charged and tried in the circuit court, we herein refer to Richard W. Reading as defendant or appellant, except as otherwise indicated.

The first reason asserted in support of this appeal is that the trial court erred in refusing to direct a verdict of not guilty on the ground of insufficient evidence of conspiracy to obstruct justice on the part of this appellant. Our review of this record conclusively discloses that this ground of appeal is without merit. The record on the appeal of these joint prosecutions consists of four large volumes containing upwards of 2,400 pages. Aside from that portion of the people's testimony which was pertinent to the prosecution of defendant Reading, his own testimony on direct and cross-examination occupies over 100 pages of the printed record. It would serve no useful purpose to attempt to review in detail all the testimony in consequence of which a question was fairly presented for the jury as to the guilt or innocence of this appellant; and we note only the following. The record clearly shows that one Boykin was a go-between or contact man between Mayor Reading and others interested in the operation of gambling; and that one Raymond W. Boettcher, a member of the police department, also served this appellant in that capacity. Boettcher, as a witness in behalf of the prosecution, testified that in the latter part of 1938 he received from one Everett I. Watson $4,000 and that Watson said, "$2,000 was for the mayor (Reading), $1,800 for Frahm and $200 for myself." And the witness further testified:

"I called the mayor on the telephone   *   *   *
and told him I wanted to see him and did see him
at the Book-Cadillac Hotel. I didn't pay much at-
tention the first couple of months; after I had been
going to the Book for a while, I remember the
(room) number was 2815. I continued to go to 2815
until August, 1939, and I never went to that room
to see anybody other than Richard W. Reading. I
saw him on this first occasion after Watson had
given me this $2,000 for him after the telephone call
and I just gave him the envelope with the money in
it in this room in the Book-Cadillac Hotel. He made
no comment outside of passing the time of day.
*   *   *   This was in October or December, I should
say, of 1938, but I had contacted him in October as
well as November. In December, 1938, I gave him
$3,000 more; in January, 1939, I gave him $8,000;
in February, I contacted him at the same place,
2815 Book-Cadillac. I would arrange to meet him
by contacting him on the telephone at which time,
I would arrange for a specific time, and then meet
him at that time."

The foregoing testimony and much of the other
testimony offered by the people which tended to
incriminate Reading was directly contradicted by
Reading. For example, concerning the witness
Boettcher, Reading testified:

"I met him on one or two occasions at functions
of the police department   *   *   *   I hardly knew
him. He never came to my room at 2815 Book-
Cadillac Hotel at any time, and I never received any
money from him for any purpose, definitely,   *   *   *
not a cent."

The record contains much other testimony, which
we refrain from quoting, which either directly or
by fair inference supported the prosecution's con-
tention that this appellant was guilty of the charge

of which he was convicted. It cannot be said that the verdict of the jury was not sustained by the proof or that the trial judge erred in refusing to direct a verdict of not guilty in behalf of Reading.

Another ground of error alleged by appellant is the court's refusal to admit into evidence the context of certain communications which appellant received from the commissioner of police of Detroit. The court's ruling on the admissibility of these exhibits came up incident to the direct examination of Reading who was a witness in his own behalf. In the main the purpose for which exhibits of this character were offered is indicated by the following statement of appellant's counsel:

"I submit, your Honor please, it goes to the fact that showing what was in the intent of the mind of the mayor in making his approval of certain advancements in ranks of police officers and further, it is in reply to the accusations by the prosecution that certain things were done in the police department * * * with the knowledge of the mayor. I conclude, your Honor please, that the communications here definitely show otherwise. * * *

"We want to show that the commissioner of police had recommended Boettcher for advancement and it was at the same time that the witness Boettcher had testified he started to pay money to the mayor of the city of Detroit, and shows whether or not there is any motive behind the testimony of Boettcher, coming in here to testify."

The foregoing refers to a letter identified as exhibit 140; and notwithstanding the court ruled against the contents of the letter being admissible, Reading was permitted to testify as follows relative to the letter:

"Exhibit No. 140 was a letter I received from Commissioner Pickert in December, 1938, and after

that letter was submitted to me I crossed off certain names (of police officers proposed for promotion), and I returned the letter back to the commissioner, and it was sent back to me again together with a revised list.   *   *   *   I remember very distinctly of Mr. Boettcher's name appearing on that particular list at that particular time, and I crossed it off, and sent it back to the commissioner.''

Because of the foregoing and other testimony which clearly revealed the purport of the excluded exhibits, the ruling of the trial court was not erroneous.

Appellant urges error (1) because of alleged prejudicial remarks made to his counsel by the trial judge and also (2) because of alleged prejudicial remarks of the prosecuting attorney.  The first of these two claims of error may well be considered in connection with defendant's fifth reason assigned in support of his appeal, which is that the trial court ''erred in admitting in evidence a collateral criminal indictment in the United States district court, wherein this appellant was a defendant, and in permitting the prosecuting attorney to read to the jury the counts of the indictment.''

As to the asserted error last above quoted the record discloses that appellant in his direct examination testified relative to his having been convicted of a criminal charge in the Federal court. We quote from this testimony:

''I was indicted by the Federal court after I became mayor,   *   *   *   about one and one-half years ago, I think.   *   *   *   I was charged with making a false statement in connection with the bank settlement, with the receivers of the First National Bank.  At the time the settlement was being negotiated,   *   *   *   and I might say we had been negotiating back and forth on the obligations that I

owed (several thousand dollars). * * * The other part of the charge was that I had money in the bank. I made a statement to the bank on the basis of what they could collect from me if they attempted to collect it. I made a statement which disclosed all the property I had. * * * But I did not include in that some moneys that I had in a safety deposit vault which was held in a joint box that either my wife or I could take the money out. * * * After I was confronted with that particular charge, I had attorneys who represented me in court and as soon as it was brought to my attention that I should have reported that money, I said, 'If that is what I should have done, I am certainly guilty of it.' I was fined $10,500 and placed on probation for three years.''

On cross-examination of Reading the prosecuting attorney offered and there was received in evidence the indictment under which defendant was convicted, as he had related in his direct examination. Obviously this was within the proper scope of cross-examination in that it tended to reveal to the jury and to enable the prosecutor to ascertain whether or not plaintiff had made a full, fair and complete statement of the nature of the prosecution wherein he had been convicted on his plea of guilty in the Federal court. And in this respect it may be noted that it does not appear from the appellant's direct testimony that he was charged with making a dishonest disclosure for the purpose of effecting a fraudulent settlement of his obligations to a national bank, but this was charged in the indictment received in evidence during appellant's cross-examination. The indictment was the best evidence of the character and contents of the charge made in the Federal court against this defendant and which he had attempted to narrate on his direct examina-

tion.  Defendant had voluntarily brought this subject matter into the instant case and thus made it a proper field of cross-examination.  It was not error to receive the indictment in evidence on cross-examination and to permit the prosecuting attorney to read to the jury the counts to which defendant had pleaded guilty.

As noted above, appellant's claim that the trial court erred in making prejudicial remarks to defendant's counsel, is in connection with the court's ruling on the admissibility of the Federal indictment over objection of defendant's counsel.  The court's ruling was limited to receiving in evidence only the counts to which defendant pleaded guilty.  After considerable colloquy in which counsel representing defendant continued to oppose the court's ruling, the court said: "You opened this matter up on direct examination, and I am permitting, on this cross-examination, the record of *just* what he plead guilty to and *just* what was the disposition of that case, upon the theory that you, having opened it and told a part of the truth, the jury are entitled to it all."  Defendant's counsel promptly objected as being prejudicial to the words of the court: "You * * * told a part of the truth."  Thereupon the court at once recognized this obviously inadvertent and improper remark and stated: "That remark may be stricken out.  That should not have been stated.  The 'part of the truth.'  The rest of it stands."  It is quite impossible in a heated trial of this character wherein counsel are strenuously asserting their respective contentions that some remark may not be made by either court or counsel which might better have been omitted.  But when, as in this instance, a slight irregularity creeps into the record, but is immediately stricken, it does not constitute reversible error.  Further, in the instant

case it may be noted that the court's remark was not wholly without justification, because in his direct examination appellant had apparently sought to give the impression to the jury that the offense of which he was convicted in the Federal court was inadvertently or unknowingly committed, but the indictment to which he pleaded guilty charged that Reading "did knowingly and wilfully, falsely, conceal and cover up a material fact;" and that he "did knowingly and wilfully make * * * a fraudulent statement and representation" material to the matter for which he was being prosecuted. Thus the materiality and propriety of receiving in evidence the indictment as part of defendant's cross-examination is quite apparent. In the matter under consideration there was no error, and the trial court properly denied defendant's motion for a mistrial based on this incident.

As to appellant's contention that the trial court erred in refusing appellant's motion for a mistrial because of prejudicial remarks of the prosecuting attorney, we have carefully reviewed the record to which appellant's brief refers in this particular; and we find that it merely presents an ordinary controversy between counsel as to the admissibility of certain evidence. The colloquy that passed was no more than that of the usual type which quite inevitably occurs in the trial of strenuously contested cases. There is no merit to this assignment of error.

Defendant, who was at liberty on bond, claims he was absent from the circuit court room when the jury, pending its deliberation, requested and was given further instructions. Appellant asserts that this constituted reversible error. Since appellant was at liberty to be present or absent from the court room at the particular time the jury was given these further instructions, he cannot now be

heard to assert error because he voluntarily absented himself. As bearing upon this phase of the law, see *People* v. *LaMunion,* 64 Mich. 709; *Frey* v. *Calhoun Circuit Judge,* 107 Mich. 130; *People* v. *Burkhart,* 165 Mich. 240; *People* v. *Jaskulski,* 236 Mich. 237. This claim of error was asserted by defendant in support of his motion for a new trial; and in disposing of that motion the trial court said: "The claim of error because the court charged. the jury in the absence of the defendants is without foundation inasmuch as only certain portions of the charge previously given to the jury in the presence of the defendants were read verbatim and without any additions or changes therein. Under the rulings of our Supreme Court this is permissible." This claim of error cannot be sustained.

Two other reasons in support of this appeal are stated by appellant as follows: The trial court erred (1) "in admitting evidence of overt acts of an alleged separate and distinct conspiracy of appellant and other defendants not charged in this indictment," and (2) "in admitting evidence of acts occurring prior to or subsequent to the time of the running of the conspiracy alleged in the indictment." As to (1) it is stated in appellant's brief:

"It is axiomatic that no man can be tried for several separate and distinct offenses at the one time. Witness Boettcher's testimony as to money received in an alleged separate conspiracy to operate handbooks not charged in the present indictment, together with similar testimony of other witnesses, was highly prejudicial and should not have been received in evidence."

The record before us clearly indicates that there was a close connection between the offense charged

as being a conspiracy to protect the operation of gambling known as numbers and another conspiracy disclosed which had to do with protecting handbook gambling. But in neither (1) nor (2) above noted can it be held that the testimony taken exceeded the bounds of admissibility to the extent that it constituted reversible error. By Reading's testimony there was an attempt to show that while large sums of money passed through his hands, such funds were used legitimately incident to conducting political campaigns. Under the circumstances the matter of the intent of this defendant in receiving funds from other parties became material to the successful prosecution of this case against him. If for no other reason, the type of testimony now under consideration, including both (1) and (2) above, was admissible as bearing upon intent. Review of the record places us in accord with the trial judge who, in passing upon the motion for a new trial, said, "Neither is this court impressed with the claim that such testimony, or any portion thereof, amounting (amounted) to placing certain defendants on trial for two separate offenses. The rights of defendants with reference to the handbook testimony were protected in the charge of the court, and that is particularly true of defendants Ryan and Reading." We are not in accord with appellant's contention that reception of testimony which was of either of the two types now under consideration constituted reversible error.

Appellant's contention that there was error on the part of the trial court "in refusing the cross-examination of the people's witnesses as to statements made by them before the so-called one-man grand jury" and also "in granting State witnesses who were previously granted immunity the constitu-

tional privilege* of refusing to state their occupation and means of livelihood'' is without merit; and need not be here discussed in detail for the reason that these objections are covered in our opinion in the *Roxborough Case, ante,* 575.   See, also, *People v. Watson, ante,* 596.

Contrary to appellant's contention, his right to a fair trial was in no way prejudiced by the receipt in evidence of rules and regulations of the Detroit police department or the evidence which appellant claims was discovered as a result of illegal search and seizure of the bank accounts of the codefendant Peter Kosiba.   Several of the Detroit police officers were codefendants in this prosecution, and evidence of the rules and regulations of the police department were material and competent evidence of the duties of the respective officers of that department, and Reading was charged with conspiracy to prevent performance of official duties of police officers. The application to be made of the testimony relative to these rules and regulations was carefully stated by the circuit judge in his charge to the jury. The trial court granted a motion to suppress the articles which were obtained from Kosiba's home by an unlawful search and seizure.   Notwithstanding this, other testimony as to certain facts and circumstances which might have been disclosed by the articles obtained in the unlawful search and seizure was competent and properly received by the court.

Appellant further urges as a reason why his conviction should be set aside that (1) ''the court erred in admitting in evidence statements of defendants made to members of the grand jury staff in the of-

---

* See Const. 1908, art. 2, § 16.—REPORTER.

fice of the grand jury and (2) in refusing to quash charges against this defendant on the ground that he had testified pertaining to matters covered in the information as a witness subpoenaed before the grand jury.''

There is no discussion in appellant's brief as to portion (1) of the above alleged error; and our review of the record discloses no reversible error within this phase of the assignment of error. We therefore hold it is not well founded.

As to portion (2) of the above alleged error, it is to be noted that while appellant was a witness in the grand jury proceedings, at no time so far as is disclosed by this record did he, while testifying, assert that any portion of his testimony might tend to incriminate him and therefore he claimed his constitutional right not to incriminate himself. Under such circumstances his present contention that the instant charges against him should have been quashed is without merit. See *People* v. *Robinson,* 306 Mich. 167. It is urged in appellant's brief that we should depart from the holdings in this jurisdiction in this particular and in support of this contention *United States* v. *Monia,* 317 U. S. 424 (63 Sup. Ct. 409, 87 L. Ed. 376), is cited. That case was a prosecution under the Sherman act* and the holding therein is squarely based upon a specific provision in that act to the effect that ''no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify    *    *    *    in any proceeding, suit, or prosecution'' under the Sherman anti-trust act. In deciding the *Monia Case* a holding of the district court ''that the plain mandate of the statute precluded prosecution of the appellees whether they had claimed the privilege or not'' was upheld. Obviously the *Monia Case* was controlled by a specific

---

* See 15 USCA, §§ 1-7, 15.—Reporter.

Federal enactment which in no way controls criminal procedure in this jurisdiction, where the method in which one may obtain immunity from prosecution as to matters concerning which he gave self-incriminating testimony before a grand jury is definitely provided by statute. See 3 Comp. Laws 1929, § 17220 (Stat. Ann. § 28.946). This ground of error alleged by appellant is not tenable.

In so far as appellant urges on this appeal that the trial-judge erred in denying appellant's motion for a new trial, his various contentions have been covered in the foregoing. We find no error in that ruling. Appellant's conviction and sentence are affirmed.

BOYLES, C. J., and CHANDLER, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, J., concurred.