STATE of Iowa, Appellee,

v.

Anthony Allen OROZCO, Appellant.

No. 54855.

Supreme Court of Iowa.

Oct. 13, 1971.

Raymond P. Drew, Hampton, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., Lee B. Blum, County Atty., Hampton, for appellee.

RAWLINGS, Justice.

Defendant, Anthony Allen Orozco, was convicted of robbery with aggravation, and conspiracy. From sentences accordingly entered he appeals. We affirm.

Charges against defendant stem from the robbery of Florence Vanasse at Flo's Cafe in Alexander.

First to testify for the State was Mrs. Vanasse. This witness stated she operates a cafe in Alexander. December 15, 1969 at approximately 8:00 P.M. a young man entered her restaurant, armed with a rifle, and demanded all money in the cash register. Mrs. Vanasse complied. A patron, Mr. Larson, was also robbed. Before departing the assailant fired several shots, one at the phone. The two victims were also told to remain in the cafe for 30 minutes as he had a buddy across the street. At this point Richard John Carpenter, Jr. was brought into the courtroom and Mrs. Vanasse identified him as the man who robbed her the night in question.

Gary Jessen, called as a witness for the State, testified he operates a farm store directly across the street from Flo's Cafe. Mr. Jessen said there were mercury streetlights in front of both business establishments. December 15, 1969, at about 8:00 P.M. a Mrs. Kern contacted him by phone. She reported someone had fired two shots at one of the streetlights and a man was standing by a car in the street.

At this point the State presented jury absent testimony relative to identification of defendant at a lineup conducted subsequent to the robbery charge. Craig Beek was the first witness at this hearing. His testimony discloses he, as a special agent for the Iowa Bureau of Criminal Investi-gation, conducted a police lineup January 8, 1970, in Charles City. The purpose was to ascertain whether witnesses could identify anyone connected with the Flo's Cafe robbery. Defendant was one of six men in the lineup. Mr. and Mrs. Arthur Kern of Alexander were present. Mrs. Kern identified defendant as the man who shot out the streetlight. An attorney, representing defendant, was present at all stages of the lineup and stated he had no objection to the proceeding.

Following Agent Beek's testimony defendant's attorney objected to any evidence relative to such identification only because Richard Carpenter was not present in the lineup, and this constituted denial of due process. Defendant's objection was overruled.

Trial testimony, in presence of the jury, was then resumed. Louise Kern, called as a witness for the State, testified she and her husband own a tavern in Alexander. December 15, 1969, they closed the place at about 7:30 P.M. and went upstairs to their apartment. This witness stated, at approximately 8:00 P.M. she looked out the window and saw an automobile in the middle of the street with the door open on the driver's side. A man got out of the car and shot at the streetlight twice. Defendant was identified by her as the party she saw do the shooting. Absent objection she also stated her husband witnessed the incident and they had both identified defendant in the lineup.

Richard John Carpenter, Jr., also testified for the State. Carpenter stated, the morning of December 15, 1969, he and defendant went hunting. They first started drinking beer, but returned to defendant's home about 1:00 in the afternoon and got something to eat. The two men then drove into the country again where they shot a cow, and broke into two farm houses. Carpenter stated he and defendant then went to a gas station in Fertile where Carpenter perpetrated a robbery while defendant waited in the car. They subsequently

committed the same offense at a restaurant in Alexander, and the Pine's Motel in Hampton. That done they started for Mason City, stopping on the way to split their criminally obtained money. Carpenter also testified, over objection, regarding a December 19, 1969, robbery committed by him and defendant at Northwood.

The State then called various witnesses, victims of the robberies committed December 15 and December 19, 1969, by Carpenter and defendant.

Thereupon the State rested and defense evidence was presented. Testifying in his own behalf defendant stated he and Carpenter spent the morning of December 15, 1969, drinking beer at defendant's home in Mason City while the latter worked on an automobile. He further testified, Carpenter left his house about 2:30 that afternoon in defendant's automobile, promising to be back that night. Defendant also said he went to his parent's home in Mason City, remained there until about 7:00 in the evening, then left to pick up his wife at work. He denied being in Alexander or Hampton the night of December 15, 1969.

Stephanie Orozco, wife of defendant, testified she worked December 15, 1969, from 11:00 in the morning until 7:00 in the evening when defendant came to take her home. This witness further testified she and her husband watched television the rest of the evening, going to bed shortly after 10:00.

Cross-examination of Mrs. Orozco evoked a dispute, later considered as an issue raised on appeal.

When the defense rested several rebuttal witnesses were called by the State. Richard Porter, superintendent of the Mason City Odd Fellows' Home, where Stephanie Orozco was employed, testified, according to records at the Home, Mrs. Orozco did not work December 15, 1969.

At close of all the testimony defendant moved for a directed verdict. In so doing he urged none of the errors asserted on appeal. The motion was overruled.

Following submission of the case, trial jury returned a verdict of guilty on both charges involved. June 23, 1970, defendant was sentenced to be confined in the Iowa State Reformatory at Anamosa on the robbery with aggravation and conspiracy convictions for concurrent terms of not to exceed 25 and three years, respectively.

Issues raised on appeal are, trial court erred in, (1) admitting evidence relative to extra-judicial identification of defendant; (2) admitting evidence regarding post-offense charged events; (3) overruling defendant's objection to cross-examination of the witness Stephanie Orozco.

I. First to be considered is the lineup attendant identification. As previously disclosed an attorney representing the accused, other than counsel on appeal, was present at all stages of the aforesaid proceeding and waived any objection thereto.

Defendant does not contend there was no independent origin for the courtroom identification, or the lineup was unnecessarily suggestive and conducive to irreparable mistaken identification. See Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L. Ed.2d 402; Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267; Simmons v. United States, 390 U.S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247; United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149; Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

■ As disclosed by *Simmons* and *Stovall*, both *supra*, each case involving claimed invasion of constitutional rights regarding pretrial identification must be evaluated in light of all attendant circumstances. See also State v. Essary, 176 N. W.2d 854, 855 (Iowa).

■ Instantly defendant asserts nothing other than that a robbery related lineup for

identification purposes, absent one or more in custody persons admittedly involved in the offense, is *per se* a denial of due process. This approach may be new and novel, but without support in any authority cited or found, and is not here persuasive. We now hold, the controverted lineup proceeding, considered in light of the totality of circumstances, discloses no semblance of vitiating suggestiveness, irregularity, or denial of due process.

II. It is also contended by defendant, trial court erroneously permitted Carpenter to testify regarding a December 19, 1970, Northwood robbery. This occurred four days after commission of the charged Flo's Cafe offense. In overruling a defense objection to this line of testimony trial court, citing 16 Am.Jur.2d, Conspiracy, § 35 and 15A C.J.S. Conspiracy § 35(2), held evidence of the post-offense charged crime was admissible in connection with the alleged conspiracy.

■ We deal here not with hearsay declarations of a co-conspirator but rather with acts and conduct. In that area, where conspiracy is charged, trial courts are allowed wide latitude in determining admissibility in evidence of other offenses. See State v. Theodore, 260 Iowa 1038, 1043–1045, 150 N.W.2d 612, 615–616; 3 Underhill's Criminal Evidence, § 860 (5th ed.).

■ And it is not error to admit relevant evidence in proof of a conspiracy even if the act or acts occurred after the conspiracy has ended. See Lutwak v. United States, 344 U.S. 604, 617–618, 73 S.Ct. 481, 489, 97 L.Ed. 593; United States v. Bennett, 409 F.2d 888, 893–894 (2d Cir.); 3 Underhill's Criminal Evidence, § 864 (5th ed.).

■ But in the case at bar the conspiracy had not necessarily terminated when the Northwood robbery occurred. It might therefore stand as a closely related act in furtherance of an existing or continuing conspiracy, thus tending to prove the ulti-mate fact. See State v. Theodore, *supra;* 3 Underhill's Criminal Evidence, § 857 (5th ed.); 16 Am.Jur.2d, Conspiracy, § 35.

Moreover, the evidence here in question tended to establish absence of mistake, intent, motivation or common scheme regarding both offenses charged. See State v. Wilson, 173 N.W.2d 563, 565–566 (Iowa); 1 Wigmore on Evidence, § 370 (3d ed.).

The jury was ultimately instructed in accord with the views expressed, *supra*, absent any objection by defendant.

It is thus evident that there was no abuse of discretion on the part of trial court in permitting introduction of evidence relative to the Northwood robbery.

III. Next to be considered is the disputed cross-examination of Stephanie Orozco.

The Code 1966, Section 782.1 provides, in substance, rules of evidence prescribed for civil proceedings are generally applicable in criminal prosecutions.

Also, Code § 624.1, in part, limits cross-examination of an adverse witness to the subject matter of examination in chief. See State v. Jensen, 189 N.W.2d 919 (Iowa), opinion filed September 9, 1971; Conkling v. Conkling, 185 N.W.2d 777, 783 (Iowa).

This court has consistently held, however, the scope of cross-examination is largely within trial court's discretion. E. g., In re Estate of Cory, 169 N.W.2d 837, 844 (Iowa). See 2 Underhill's Criminal Evidence, § 504 (5th ed.).

■ Additionally an adverse witness may always be cross-examined with regard to his possible credibility, undue interest, bias, ill will, or hostility. Here again trial courts are accorded considerable latitude. See State v. Musack, 254 Iowa 104, 109–110, 116 N.W.2d 523, 526; State v. Sampson, 248 Iowa 458, 461–463, 79 N.W.2d 210, 212–213; 3 Wigmore on Evidence, §§ 943–945 (3d ed.); 4 Jones on Evidence, § 916 (5th ed.); 2 Underhill's Criminal Evi-

dence, §§ 505–506 (5th ed.); cf. State v. Harrington, 178 N.W.2d 314, 316 (Iowa).

 On direct examination Mrs. Orozco was, as aforesaid, testifying in support of defendant's asserted alibi.

This is the relevant portion of the ensuing cross-examination:

"I did not see Tony from a quarter till 11:00 in the morning until 7:00 that night. When I saw him at 7:00 he was in dirty clothes like he always is. Tony was driving the pickup truck when he came after me.

"Q. Isn't it a fact that in December, 1969, after the 22nd, or in January of 1970, that Tony wrote you a letter and told you that if he was tried you were to testify that he was at home with you on the night in question?

"MR. DREW: Just a moment. We object to this question as being improper cross examination, and further I object to the statement of facts of which there is nothing in the record to indicate any such thing, and request that the jury be admonished so.

"* * *

"MR. DREW: And it's objected to as being improper cross examination.

"THE COURT: Overruled.

"THE WITNESS: Do I answer the question now?

"MR. BLUM: Yes.

"A. No, no letter was sent.

"Q. You never received such a letter? A. Other than the letters that were censored from the sheriff's office.

"Q. If Sue Wallace were to come into this courtroom and testify that she delivered such a letter to you after she had opened it, would she be lying? A. I can only say, yes."

Mindful of applicable standards above set forth, we find no reversible error on the part of trial court in overruling defendant's objection, as made, to the first question posed above.

 Furthermore, defendant voiced no objection to the last two questions, *supra*. See State v. Coffee, 182 N.W.2d 390, 392–393 (Iowa). Under these circumstances no issue in that regard is now presented for review. See State v. Brown, 168 N.W.2d 922, 923 (Iowa), cited with applicable authorities in State v. Brown, 172 N.W.2d 152, 159 (Iowa).

In light of the foregoing we find no reversible error with regard to the cross-examination of Stephanie Orozco.

IV. The record has been examined in accord with Code § 793.18 but found to contain no error necessitating a reversal.

Affirmed.

All Justices concur, except BECKER, J., who concurs in the result.