**STATE of Iowa, Appellee,**

v.

**James F. JOHNSON, Appellant.**

**No. 56728.**

Supreme Court of Iowa.

Dec. 18, 1974.

Walter W. Rothschild, P. C., Waterloo, for appellant.

Richard C. Turner, Atty. Gen., David M. Dryer, Asst. Atty. Gen., and David Dutton, County Atty., for appellee.

McCORMICK, Justice.

Defendant appeals his conviction by jury and sentence for conspiracy in violation of Code § 719.1. The charge arose from the same incident as was involved in State v. Johnson, 222 N.W.2d 483 (Iowa 1974). The defendant in that case, Dwight G. Johnson, is this defendant's brother.

Defendant contends the trial court erred in admitting evidence of alleged offenses other than the one charged and in admitting opinion evidence regarding a technique known as "tilltapping". We reverse and remand because we believe the court erred in admitting evidence of one of the other alleged offenses.

The State's evidence tended to show defendant, his brother Dwight, and Alfred King attempted to steal money from the cash register of a Pay-Less shoe store in Waterloo during the morning of August 1, 1972. King entered the store and asked the clerk for a pair of shoelaces. While paying for them, when the clerk had the cash register open, King dropped change on top of and behind the counter. With the clerk distracted by his effort to pick up the change, Dwight Johnson, who had by then walked into the store, reached toward the cash drawer. The clerk turned in time to slam the cash drawer shut to prevent the theft. After this, King paid for the shoelaces and left the store with Dwight Johnson. Just as the clerk was about to follow them, he saw a third man, defendant, walking slowly from the rear to the front of the store. When the clerk was finally able to leave the store he was unable to see where the others had gone.

I. Defendant filed a motion in limine challenging the admissibility of evidence of other crimes allegedly committed by him in Dubuque, Iowa, and Galesburg, Illinois, principally on the ground of lack of probative value. The motion was overruled. Defendant renewed his challenge to the evidence when it was offered at trial. The trial court overruled his objections and admitted the evidence. Defendant assigns the rulings admitting the evidence of the alleged Dubuque and Galesburg incidents as error.

In State v. Wright, 191 N.W.2d 638, 639–640 (Iowa 1971), we recognized the general principle that evidence to show commission of crimes other than the one with which a defendant is charged is inadmissible. We also recognized exceptions permitting evidence of reasonably similar other crimes when it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, or (5) identity of the person charged with the commission of the crime. See State v. Garren, 220 N.W.2d 898 (Iowa 1974). The fourth of these exceptions permits evidence of overt acts committed in furtherance of a conspiracy when there is evidence of conspiracy, whether conspiracy is charged or not. State v. Huckins, 212 Iowa 283, 288–290, 234 N.W. 554, 557–558 (1931); McCormick on Evidence, § 190 at 448 (Second Ed. 1972); see § 782.6, The Code.

In an effort to avoid the applicability of these exceptions defendant offered in his

motion in limine to concede that if the evidence established his presence in the Waterloo incident on which the charge was based, his presence was in furtherance of the conspiracy alleged and was not a mistake. He asserted a defense of alibi to the Waterloo charge. His identity as one of the perpetrators of the Waterloo offense was the fighting issue in the case. Therefore his offered concession did not reach the matter of identity, one of the recognized purposes for which evidence of other crimes may be used.

■ We have consistently held the admissibility of such evidence rests largely in the trial court's discretion, but this discretion operates within limits. In order for the evidence to be admissible it must be relevant. There must be such connection between the offense charged and the other offenses that the latter can reasonably be said to establish the former, or some essential fact in issue. State v. Fetters, 202 N.W.2d 84, 92 (Iowa 1972).

■ Proof of the other offenses must be clear. "Mere suspicion is not enough. There must be no room for speculation in the minds of the jury whether the similar crimes attempted to be shown were actually committed or not." State v. Yarham, 206 Iowa 833, 840, 221 N.W. 493, 496 (1928). As part of this burden, the State must present clear proof that the defendant was culpable in the other acts in question. Crimes of third persons are not relevant. State v. Armstrong, 183 N.W.2d 205, 208–209 (Iowa 1971), cert. denied, 414 U.S. 857, 94 S.Ct. 163, 38 L.Ed.2d 108; State v. Porter, 229 Iowa 882, 886, 294 N.W. 898, 900 (1940); State v. Wackernagel, 118 Iowa 12, 14, 91 N.W. 761, 762 (1902); see State v. Hopkins, 192 N.W.2d 747, 749 (Iowa 1971); cf. United States v. Spica, 413 F.2d 129, 131 (8 Cir. 1969) ("it is essential to the admissibility of another distinct offense that the proof be plain, clear, and conclusive, and evidence of a vague and uncertain character is not admissible").

Under these standards we believe evidence of the Galesburg incident was admissible, but evidence of the Dubuque incident was not.

■ The Galesburg incident occurred October 4, 1972, subsequent to the Waterloo events. Store personnel identified defendant and his brother Dwight as participants in a theft of money from the cash register of a Galesburg drug store using a technique like that employed in Waterloo. There was evidence defendant admitted his participation in that incident by pleading guilty to it. Proof of that offense was clear.

■ The Dubuque incident occurred July 28, 1972, four days prior to the Waterloo events. Personnel in a Dubuque Pay-Less shoe store testified that a man they later identified as Alfred King distracted a clerk during a purchase of shoelaces by dropping change on the counter and floor while a second man, whom they were unable to identify, stole money from the open cash register. After they left, the store manager called the police. Dubuque police later stopped an automobile traveling west on highway 20 approaching the west outskirts of Dubuque. It was King's automobile, was being driven by defendant, and defendant's brother Dwight was a passenger. The package of shoelaces purchased by King was found in the car. The three men were taken back to the shoe store. Five to fifteen minutes had passed since the theft. The store personnel were able to identify only King as having been involved in it.

We believe the evidence falls short of clear proof defendant was a participant in the Dubuque theft. By its admission, the jury was permitted to speculate that defendant was culpable in that offense despite the absence of satisfactory proof he was involved in it.

We emphasize the fact the Dubuque incident preceded all other offenses alleged. Its probative value cannot be established by hindsight. There was no evidence it was an overt act in furtherance of a conspiracy to which defendant belonged or was an overt

act later ratified by defendant. See State v. Hopkins, supra; State v. Orozco, 190 N.W.2d 830 (Iowa 1971); 3 Underhill's Criminal Evidence, § 862 (Fifth Ed. 1957). Since defendant's participation in the incident was not shown, it cannot be argued evidence of that incident came within any other exception to the general rule against admissibility of evidence of other crimes. State v. Johnson, supra, 222 N.W.2d at 485.

■ Even when evidence of other crimes has some relevancy, the trial court must exercise discretion to determine whether the probative value of the evidence is outweighed by its prejudicial effect. "Exercise of trial court discretion * * * goes beyond the question of categorical classification to a determination whether the 'minute peg of relevancy will be entirely obscured by the dirty linen hung upon it.'" State v. Wright, 203 N.W.2d 247, 251 (Iowa 1972).

■ In McCormick on Evidence, supra, § 190 at 453–454, the author summarizes the considerations involved in this balancing process:

"* * * [T]he problem is * * * one of balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be aroused by the evidence to overmastering hostility.

"Such a balancing calls for a large measure of individual judgment about the relative gravity of imponderables. Accordingly, some opinions stress the element of discretion. It should be recognized, however, that this is not a discretion to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that accused is a bad man and hence probably committed this crime, must be excluded. The leeway of discretion lies rather in the opposite direction, empowering the judge to exclude the other-crimes evidence, even when it has substantial independent relevancy, if in his judgment its probative value for this purpose is outweighed by the danger that it will stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial. Discretion implies not only leeway but responsibility. A decision clearly wrong on this question of balancing probative value against danger of prejudice will be corrected on appeal as an abuse of discretion."

In this case the State's evidence of the alleged Dubuque offense lacked probative value because defendant's culpability in it was not clearly shown. But, even assuming the evidence possessed minimal probative value, a correct exercise of trial court discretion balancing its relevancy against its prejudicial effect would have compelled its exclusion.

We hold it was reversible error for the trial court to overrule defendant's objections to evidence of the Dubuque incident.

II. Since the case must be reversed and remanded, we believe it is necessary to treat defendant's second assignment of error to provide guidance upon retrial. He contends the trial court erred in permitting a police scientist to express an opinion comparing defendant's alleged conduct with a technique of retail theft known as "tilltapping."

As its final witness during its case-in-chief, the State called Gary Jensen, an administrator and law enforcement instructor at Hawkeye Institute of Technology in Waterloo. His qualifications as an expert in retail security are not challenged. His background included substantial experience and training as a police officer, detective, and retail security officer.

After detailing his qualifications he was asked for and acknowledged his familiarity

with the technique of retail theft called tilltapping. Asked to define it, he answered, without objection, that, "The crime of tilltapping is an operation in which normally two or more people are engaged in which the attention of a clerk or cash register operator is diverted by one individual away from the cash register so that a second individual can reach into the cash register and remove money." Then, also without objection, he gave further explanation of the technique.

Next he was presented with a hypothetical question, consuming more than seven pages of the transcript, in which he was told to assume practically all the State's evidence in the case and asked whether he had an opinion "as to what, if any, special type of crime, retail crime, was committed * * * or attempted * * * in any one or all three of the incidents." When he said he did, he was asked what his opinion was.

Objection was made to the question on several grounds including assertions the opinion would invade the province of the jury and was not on a proper subject of expert testimony. When the court overruled the objection, the witness answered, "In each of the three examples it was tilltapping that was taking place." He was then permitted to testify, over objection, as to the roles of the persons involved in the Waterloo offense.

■ Defendant first asserts the opinion was on a subject within the realm of common knowledge and experience and thus not a proper subject of expert testimony. In State v. Hines, 223 N.W.2d 190, 192 (Iowa 1974), we said:

> "Basic to the admissibility of expert opinion evidence is the requirement it be helpful to the jury. The body of knowledge which the expert brings must be outside the realm of common knowledge and experience."

In that case we also recognized that when seemingly innocent acts interrelate to form a standard pattern by which certain crimes are committed, expert opinion evidence

identifying and explaining that pattern is admissible. Tilltapping is a well-defined, standard method of retail larceny. A qualified expert with knowledge of tilltapping possesses a special knowledge of a subject which is not within the common experience of mankind generally. State v. Hines, supra; People v. Clay, 227 Cal.App.2d 87, 38 Cal.Rptr. 431 (1964); annot., 100 A.L.R.2d 1433 et seq. Evidence of the *modus operandi* involved in tilltapping may therefore be helpful to the jury. It is a proper subject of expert testimony.

Defendant alternatively contends the hypothetical question called for the witness to express an opinion on the very issue the jury was to determine, the guilt or innocence of the defendant.

■ The objection in the trial court that the opinion would invade the province of the jury was not sufficient to preserve that issue for review. When inquiry is directed to a proper subject of expert testimony, an objection that it invades the province of the jury is invalid. State v. Hines, supra; State v. Taylor, 201 N.W.2d 724, 727 (Iowa 1972), and citations; see Een v. Consolidated Freightways, 220 F.2d 82, 87 (8 Cir. 1955). However, the objection that the opinion was not a proper subject of expert testimony was adequate to preserve the issue for review. The question of legal guilt or innocence involves legal principles upon which the court instructs the jury. It is not a proper subject of expert testimony. Grismore v. Consolidated Products Co., 232 Iowa 328, 361, 5 N.W.2d 646, 663 (1942); see State v. Hines, supra, and citations.

■ There is a fine but essential distinction between asking a witness to compare the evidence in a case with a particular, well-defined *modus operandi* and asking a witness for an opinion based on that evidence as to the legal guilt or innocence of the defendant. The State's question went too far in this case in asking the witness what crime, if any, was committed in the three incidents. The only thing which pre-

cludes a finding of reversible error is the fact the witness did not answer the question as asked, but instead expressed the opinion that tilltapping was involved in all three incidents.

The same problem was presented in State v. Clay, supra. There the court held:

"The result of the hypothetical question * * * was to place before the jury the witness' opinion that the conduct of defendant and Davis under the facts of the case was consistent with the procedure of a till tapping operation. This was a permissible opinion although directed to an ultimate issue in the case. While we think that the hypothetical question could have been improved by eliminating use of the word 'crime' it is notable that the witness' response was expressed only in terms of the 'usual procedure of till tappers.' * * * We are satisfied that the trial court did not abuse its discretion in admitting and refusing to strike the inspector's testimony." 38 Cal. Rptr. at 438–439.

Although, as in Clay, the State's question went too far in this case, the answer saved the trial court from reversible error.

■■■ The trial court would have been within its discretion in limiting the State's inquiry to the nature and examples of the tilltapping technique rather than permitting the State to summarize the evidence in the case and invite a comparison between that evidence and tilltapping. In view of the other testimony of the witness defining and explaining tilltapping, the court could have held the additional opinion to be superfluous. An opinion which is not likely to assist the jury need not be received. Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 651 (Iowa 1970). The answer to the hypothetical question was of questionable utility to the jury's understanding, and it bordered on the limits of proper inquiry.

For the reasons given in Division I, the case must be reversed and remanded.

Reversed and remanded.

All justices concur except MOORE, C. J., and HARRIS, UHLENHOPP and REYNOLDSON, JJ., who dissent.

HARRIS, Justice (dissenting).

I respectfully dissent because I believe evidence of the Dubuque incident was admissible under the same rules which admit evidence of the Galesburg incident.

The controlling question is how conclusively the State must prove defendant guilty of another crime before evidence of it becomes admissible under the rule. I do not believe the rule which admits evidence of another overt act should be interpreted to admit only conclusive proof of guilt of such other act. I believe the proof here was ample to render defendant both involved and culpable under the test described by the majority.

Because of its clandestine nature conspiracy may be, and usually must be, inferred by the jury from proof which, taken together, shows various acts to be parts of a scheme. Accordingly the law considerably tempers in conspiracy cases the strictness of the rule which would otherwise exclude evidence of other crimes. State v. Schenk, 236 Iowa 178, 18 N.W.2d 169; State v. Theodore, 260 Iowa 1038, 1043–1045, 150 N.W.2d 612, 615–616; State v. Orozco, 190 N.W.2d 830 (Iowa 1971); 3 Underhill's Criminal Evidence, Fifth Ed., § 860, pages 1926–1929; II Wigmore on Evidence, Third Ed., § 370, page 299. See also 16 Am.Jur.2d, Conspiracy, § 35, page 146; 22A C.J.S. Criminal Law § 691(8), page 815.

An Iowa statute acknowledges the same principle:

"Upon a trial for conspiracy, a defendant cannot be convicted unless one or more overt acts alleged in the indictment are proved, when required by law to constitute the offense, *but other overt acts not alleged in the indictment may be given in evidence*." (Emphasis added). Section 782.6, The Code.

In recognition of these principles the majority approves the admission of evidence of the Galesburg incident. I think the refusal of the majority to similarly allow admission of evidence of the Dubuque incident is an inconsistent violation of the same principles.

The majority points out the Dubuque incident antedated by four days the overt act which gave rise to this prosecution. But there is nothing about the subsequent act in Waterloo which in any way implies the motive and intent underlying the conspiracy did not arise until that day. Even if it is assumed the conspiracy was formed in the four days following the Dubuque incident the evidence was admissible: "If, prior to the formation of the conspiracy, a defendant participated in the acts or declarations which are being testified to, they are admissible against him to show intent and motive." 3 Underhill's Criminal Evidence, Fifth Ed., § 862 at page 1933.

Evidence of overt acts prior to the formation of a conspiracy was admitted in People v. Brown, 26 Ill.2d 308, 186 N.E.2d 321; People v. Reading, 307 Mich. 616, 12 N.W.2d 482, and Commonwealth v. Grosso, 192 Pa. Super. 513, 162 A.2d 421.

The factual resemblance of the three incidents was striking. The same modus operandi was employed. A relatively short span of time was involved. The same automobile was used. And two individuals, including this defendant, were involved in all three incidents while a third individual was involved in at least two.

The majority seems satisfied with the State's showing the Dubuque incident occurred but rejects the evidence on the claim this defendant's involvement was not sufficiently shown. I disagree. The question should be considered in the light of all three incidents and in light of the fact his involvement in the other two was not seriously questioned. Indeed defendant concedes his involvement in the Galesburg incident.

This case can be distinguished from that of his brother, State v. Johnson, 222 N.W.2d 483 (Iowa 1974). In this case the evidence showed defendant was returned to the scene, according to State testimony, within five minutes of his leaving. He had been stopped driving the automobile in which the identified would-be thief was passenger. The shoelaces obtained in the store were in the same car.

Even if defendant were found not to have aided and abetted the crime a jury might find he was an accessory after the fact. See State v. Kittelson, 164 N.W.2d 157, 165 (Iowa 1969) and § 688.2, The Code.

Since I agree the evidence of the expert witness on the technique of till tapping was properly admitted I would affirm.

MOORE, C. J., and UHLENHOPP and REYNOLDSON, JJ., join this dissent.