STATE of Iowa, Appellee,

v.

James F. JOHNSON, Appellant.

No. 58267.

Supreme Court of Iowa.

Jan. 21, 1976.

Stanford J. Patterson, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., and David Dutton, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, LeGRAND, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

Defendant was charged with the crime of conspiracy in violation of § 719.1, The Code. His appeal from an earlier jury conviction of the charge resulted in a reversal. *State v. [James] Johnson*, 224 N.W.2d 617 (Iowa 1974). The same incident gave rise to a similar conviction and a separate appeal by defendant's brother. *State v. [Dwight] Johnson*, 222 N.W.2d 483 (Iowa 1974).

Following our reversal of defendant's first conviction the case was remanded for a new trial. Defendant was again convicted and brings this appeal from the second conviction. We affirm the trial court.

On August 1, 1972, Thomas Brown, a sales clerk in a Waterloo store, was assisting a customer near the back of the store. Alfred King, appearing as another customer, summoned Brown to the cash register to attend a purchase. While Brown had the cash register open for this purpose King dropped change on the counter and on the floor behind the counter.

While Brown was picking up coins Dwight Johnson reached into the open cash register drawer. As Brown turned around Dwight's hand was quickly withdrawn. The purchase was completed and the two men left the store together. Brown then noted a third man, later identified as defendant, walk up an aisle and out the door.

■ I. The State offered evidence defendant was involved in another, similar crime ten days later in Texarkana, Arkansas. Defendant contends this evidence was improperly admitted because it was irrelevant because it was too remote in time and place to bear on the instant charge. He also contends the State did not show he was culpably involved in the Texarkana incident and claims it was dissimilar to the one in Waterloo which gave rise to this prosecution.

Controlling principles were explained in the majority opinion in defendant's earlier appeal. The general rule is " * * * that evidence to show commission of crimes other than the one with which a defendant is charged is inadmissible. We also [recognize] exceptions permitting evidence of reasonably similar other crimes when it tends to prove (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or system of criminal activity embracing the commission of two or more crimes so related that proof of one tends to prove the other, or (5) identity of the person charged with the commission of the crime. (Authority). The fourth of these exceptions permits evidence of overt acts committed in furtherance of a conspiracy when there is evidence of conspiracy, whether conspiracy is charged or not. (Authorities)." *Johnson*, supra, 224 N.W.2d at 619.

We went on to explain that in order to qualify under any of these exceptions " * * * the State must present clear proof that the defendant was culpable in the other acts in question. * * *." *Johnson*, supra, 224 N.W.2d at 620. We have elsewhere held that to insure the rele-

vance of other crimes the other offenses must " * * * be reasonably similar to the act on which the prosecution is based. * * *." *State v. Fetters,* 202 N.W.2d 84, 92 (Iowa 1972). In defendant's first appeal we also pointed out the trial court must exercise discretion to determine whether the probative value of relevant evidence is outweighed by its prejudicial effect. Quoting from *State v. Wright,* 203 N.W.2d 247, 251 (Iowa 1972) we said: "Exercise of trial court discretion * * * goes beyond the question of categorical classification to a determination whether the 'minute peg of relevancy will be entirely obscured by the dirty linen hung upon it.' " *Johnson,* supra, 224 N.W.2d at 621.

We believe the evidence of the Texarkana crime was properly received. Defendant was shown culpably involved in that incident. It was similar to the one he was here charged with. And the Texarkana crime tended to prove intent, motive, lack of mistake, a common scheme and identity for the instant prosecution.

Defendant's culpability appeared by the testimony of Rochelle Valliant. She testified she accompanied Alfred King, an individual named Dwight, and defendant from St. Louis, Missouri to Texarkana, Arkansas, arriving on August 11, 1972. Discussion among the three men upon arriving at Texarkana centered around the amount of money in a particular store there, where to park and planning a getaway. She testified she and King purchased items from that store and that King then diverted the attention of the cashier away from the counter. She testified (though she contradicted herself on cross-examination) defendant then reached under the counter and took a money bag. She and King later picked up defendant and Dwight who had a money bag in their possession. The men discussed what a large sum of money they had gotten.

Defendant's culpable involvement was also shown by the testimony of Detective Gary Owen who testified defendant and the others were arrested for the Texarkana crime.

Defendant contends the two crimes were dissimilar. He points out Valliant and King diverted the cashier's attention by asking a question rather than by dropping coins. He also points out Valliant testified defendant took a money bag from under the counter rather than cash from the open cash register. We believe these variances to be insignificant. Tilltapping was described in our opinion upon defendant's first appeal. It involves two or more people working together as "lookouts", "diverters", and "snatchers." The Texarkana incident fits well within the definition.

Finally we reject defendant's argument the Texarkana incident was too remote. An objection based on remoteness raises the issue of relevancy. *State v. Engeman,* 217 N.W.2d 638, 639 (Iowa 1974).

Testimony concerning the Texarkana incident casts considerable light upon the Waterloo crime. By itself the fact defendant walked into the store in Waterloo and was present while two men attempted to tilltap might be the subject of varying interpretations. When seen in the light of Valliant's testimony regarding the Texarkana incident defendant's actions take on a different quality.

"The basic test of relevancy is whether the evidence offered would render the desired inference more probable than it would be without the evidence. * * *." *State v. Mathias,* 216 N.W.2d 319, 322 (Iowa 1974). See also *In re Estate of Poulos,* 229 N.W.2d 721, 726 (Iowa 1975); *State v. Maestas,* 224 N.W.2d 248, 251–252 (Iowa 1974). Clearly, the State's claims of defendant's intent, motive, lack of mistake and system of criminal activity are rendered more probable by the evidence.

In Johnson's first appeal, 224 N.W.2d at 621, we quoted with approval McCormick on Evidence for a summary of the considerations involved in balancing the probative value of evidence against its prejudicial effect. Evidence of the Texarkana incident

had high probative value to explain defendant's presence in the store. The evidence was not such as to inflame the jurors so as to block out a rational determination of guilt or innocence. The evidence was properly received. Defendant's claim to the contrary is without merit.

■ II. Defendant argues it was error to admit Valliant's testimony of the Texarkana crime because of § 782.5, The Code. That section provides:

"A conviction cannot be had upon the testimony of an accomplice, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely show the commission of the offense or the circumstances thereof."

Defendant's position is without merit for at least two reasons. The witness was not an accomplice in the incident for which defendant was on trial. And the section deals only with sufficiency, not the admissibility of evidence.

Defendant's argument was rejected in *State v. Armstrong*, 203 N.W.2d 269, 273 (Iowa 1972) where we said:

"Defendant misconstrues Code § 782.5. [The witness] was not an accomplice in the instantly involved * * * transaction. And as this court said in *State v. Jennings*, 195 N.W.2d 351, 356 (Iowa 1972): 'The general rule for determining whether a witness is an accomplice is if he could be charged with and convicted *of the specific offense for which an accused is on trial.*' (Emphasis supplied.)

"It is thus self-evident, corroboration of [the witness's] similar transaction testimony was not required."

See *State v. Houston*, 211 N.W.2d 598, 601 (Iowa 1973). See also *State v. Grindle*, 215 N.W.2d 268, 270 (Iowa 1974), quoting from *State v. Jennings*, 195 N.W.2d 351, 356 (Iowa 1972); *State v. Wiese*, 182 N.W.2d 918, 920 (Iowa 1971) and *State v. Upton*, 167 N.W.2d 625, 628 (Iowa 1969).

The offense charged took place in Waterloo on August 1, 1972. The testimony indicated that only three men were involved. At no time was there any indication of the witness Valliant's involvement. Valliant testified on voir dire she had known defendant and Dwight only a few days prior to August 9, 1972.

Section 782.5, The Code, is premised on the inherent suspicion accorded an accomplice's testimony. There exist possibilities of promises of immunity or hope of reward, benefit, clemency or revenge. Such testimony is also suspect because it might be said to constitute an admission of the wrong-doing and hence untrustworthiness. See 23 C.J.S. Criminal Law § 810(2)a, p. 90 n. 80.5.

In any event the section requiring corroboration of testimony does not render evidence of the accomplice inadmissible. Nowhere in the section does it say the evidence is inadmissible if uncorroborated. It merely provides such uncorroborated testimony is inadequate for a conviction.

■ III. Defendant separately complains of the receipt of evidence he claims was hearsay. Detective Owen testified he was en route to investigate the Texarkana crime when he was directed to stop the car carrying King and Valliant. In his testimony in chief he answered without objection that he "received" from "them" (King and Valliant) the names of defendant James Johnson and Dwight Johnson. On cross-examination by defendant's attorney Owen stated that Valliant did not know James's and Dwight's last name and that he, Owen, had not received the names James and Dwight *Johnson* from Rochelle Valliant. On redirect by the State Owen was asked:

"Q. Detective Owen, did you, in fact, also receive information from Alfred King in regard to these additional two people? A. I did.

"MR. PATTERSON (defendant's counsel): I object to any information received or testified to from Alfred King as hearsay testimony, Your Honor.

"THE COURT: Overruled. The answer may remain in."

On appeal defendant claims "the court erred by permitting Detective Owen to answer as to what he had heard from Alfred King." He contends it is unclear whether Owen was relating what he had heard from Valliant or King, but that it would be hearsay from either.

The question is somewhat clouded by the record made during voir dire upon defendant's motion in limine. In voir dire the State was attempting to elicit what Owen's investigation had revealed when a hearsay objection was made and sustained. Additional hearsay objections to unrelated testimony were made and overruled during voir dire. At that time the trial court might have preserved potential error for defendant by stating he need not re-urge his objections to the testimony of Valliant and Owen before the jury. We note in passing that allowance of standing objections in jury trial is ordinarily not to be recommended.

However, we do not believe the trial court meant, nor could defense counsel have believed, a sustained objection in voir dire was preserved without additional objection if the prejudicial testimony was again introduced before the jury. Accordingly we find any error was not preserved.

It is to be noted the question objected to, and its answer only related that Owen had received information from King and did not reveal what information was received. Accordingly the testimony would not qualify under the definition of hearsay. *State v. Miller*, 204 N.W.2d 834, 840 (Iowa 1973). In any event no motion was made to strike the response. Thus the answer remained for consideration. See *Carradus v. Lange*, 203 N.W.2d 565, 567–568 (Iowa 1973); 75 Am. Jur.2d, Trial, § 178, pp. 264–265; 88 C.J.S. Trial § 133, pp. 267–269.

■ IV. On defendant's first appeal we considered a challenge to a hypothetical question. 224 N.W.2d at 621–623. Upon retrial the same witness was called as a criminal expert and was asked to testify concerning the nature of a tilltapping operation. The witness's qualifications are not challenged. But defendant again assails the allowance into evidence of an answer to a hypothetical question.

On retrial the State was guided by the admonitions contained in our opinion upon defendant's first appeal. A lengthy hypothetical situation, comprising over three pages of record and setting out the State's evidence was posed to the witness Jensen. The question set out the supposed actions of three individuals hypothetically equated to King ( # 1), Dwight ( # 2), and defendant ( # 3). The witness was asked, based on his experiences, whether he had any opinion as to similarities which might exist between the facts outlined in the hypothetical question and "the methods or manners used to achieve or accomplish the crime of tilltapping." Defendant's attorney objected that such was not a proper subject for expert testimony and that the expert would be answering the ultimate question of guilt or innocence. After the objection was overruled the witness answered "the actions of the first individual in the hypothetical * * * [question] * * * would correspond with known operational methods of an individual who is embarking on the crime of tilltapping."

A similar question was put to the witness to obtain his opinion as to the purpose of the third individual in the hypothetical question, the defendant, and "the purpose that might ordinarily be employed to accomplish the crime of tilltapping." Again over objection the witness stated the third individual "would have functioned * * * to divert attention of customers or * * * employees during the commission of the crime."

On appeal defendant contends it would have been proper for the witness merely to explain methods of tilltapping. He complains State's question went too far in asking what crime if any was committed, citing the opinion upon defendant's earlier

appeal. Defendant's position overlooks the fact defendant was on trial for the crime of conspiracy to commit grand larceny. Till-tapping, as we explained in the earlier opinion, is a *modus operandi*, a method by which larceny can be accomplished. For the reasons explained in the opinion on defendant's earlier appeal it is a proper subject for expert testimony. Although it was somewhat inaccurate to refer to this *modus operandi* as a crime the question was not objected to on that basis. The evidence was properly admitted.

V. Defendant's various other contentions, largely alternative assertions of what has been heretofore discussed, have been thoroughly considered and found without merit.

Affirmed.