**STATE of Iowa, Appellee,**

v.

**Larry Michael LARSEN, Appellant.**

**No. 92–824.**

Court of Appeals of Iowa.

Dec. 29, 1993.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Robert P. Ewald, Asst. Atty. Gen., Richard Crowl, County Atty., and Timothy O'Grady, Asst. County Atty., for appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and HABHAB, JJ.

SCHLEGEL, Judge.

The defendant, Larry Michael Larsen, appeals the judgment and sentence entered upon his conviction for first-degree arson in violation of Iowa Code sections 712.1 and 712.2 (1989). Larsen argues the district court (1) erred in failing to grant his motions for directed verdict of acquittal based on the State's failure to present sufficient evidence to corroborate the testimony of accomplice Brian Teeters and (2) abused its discretion in permitting the admission of subsequent bad act evidence regarding his involvement in a shooting two months after the offense.

In 1989 Charles Teeters decided to get even with Pottawattamie County Attorney Drew Kouris for Teeter's convictions on numerous counts of fraud, conspiracy, and arson. Over the course of three or four weeks, Teeters constructed a pipe bomb from gun powder. Teeters told his son, Bryan, that he was going to pay the defendant, Larry Larsen, $500 to plant the bomb at the Kouris home. On December 15, 1989, Teeters gave the completed bomb to Larsen and Bryan.

Shortly after midnight, Larsen and Bryan drove to the Kouris home. Larsen left and returned a few minutes later, telling Bryan that Larsen had lit the delayed fuse and set it behind the air conditioner. When the bomb failed to detonate after twenty minutes, Larsen went back and relit it. When the bomb again failed to explode, Larsen picked up the bomb and took it back to Teeters. Teeters fixed the bomb using a trick birthday candle that would not blow out.

Larsen, Bryan, and Larsen's brother, Chris, picked up the modified bomb from Teeters and again drove to the Kouris home. Larsen placed the bomb in the same place he had previously placed the bomb. The three then left the area. They returned a short time later, and when they saw fire trucks coming toward the Kouris home, they assumed the bomb had gone off. The bomb had indeed exploded at 3 a.m. The bomb blast extensively damaged the Kouris home and the home next door. None of the occupants were injured.

In February 1990 Jerry Peeler told Teeters that he would tell his probation officer about the bomb he had seen Teeters make unless Teeters gave Peeler the title to a car. Teeters promised to deliver the title, but instead asked Larsen and Bryan to go to Peeler's residence and shoot him. Bryan shot Peeler six times.

In March 1991 Teeters died. Bryan, who had been sent to prison for the shooting, approached authorities and told them about the bombing. Although Bryan initially requested that he be given prosecutorial immunity regarding the arson charge, the State ultimately agreed to allow Bryan to plead to second-degree arson.

On December 24, 1991, the State filed at trial information charging Larsen with violations of Iowa Code sections 712.1 and 712.2 (1989). Larsen filed a motion in limine, seeking to exclude evidence concerning his involvement in a shooting two months after the arson. The district court initially sustained the motion but later reversed its decision after hearing the evidence introduced at trial.

Trial commenced on April 22, 1992. At the end of the State's evidence and again at the close of all the evidence, Larsen moved for a directed verdict of acquittal, which the district court denied. The jury found Larsen guilty as charged. Larsen subsequently filed a motion for new trial, which the district court denied. Larsen was sentenced by the district court to a term of imprisonment not to exceed twenty-five years. The court further ordered that the twenty-five-year sentence was to run consecutive to any sentence already being served. Larsen has appealed. We affirm.

Larsen argues the district court should have granted his motion for directed verdict since no other evidence existed to corroborate Bryan Teeters' testimony. Larsen contends there is no physical evidence linking Larsen to the crimes alleged. Larsen also argues that any evidence regarding Peeler's shooting tended to show Charles Teeters' involvement in the bombing and his motive for silencing Peeler. He claims his involvement, if any, in the bombing was clearly separate and distinct from his alleged involvement in Peeler's shooting two months

after the bombing. Larsen maintains that even if the evidence was relevant, its probative value was substantially outweighed by the danger of unfair prejudice.

In reviewing the sufficiency of the evidence to support a conviction, we review all evidence in the light most favorable to the verdict to determine whether the record contains substantial evidence to support a guilty verdict such that a rational juror could find guilt beyond a reasonable doubt. *State v. Robinson,* 288 N.W.2d 337, 341 (Iowa 1980); *State v. Larue,* 478 N.W.2d 880, 882 (Iowa App.1991).

First, the defendant contends the district court erred in failing to grant his motions for directed verdict of acquittal based on the State's failure to present sufficient evidence to corroborate the testimony of accomplice Brian Teeters. Iowa Rule of Criminal Procedure 20(3) provides:

**Corroboration of Accomplice or Person Solicited.** A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

The requirement of corroborative evidence has been recognized as serving two purposes. First, it independently tends to connect the defendant to the crime. *State v. Brown,* 397 N.W.2d 689, 694 (Iowa 1986). Secondly, it serves as a counterweight against the dubious credibility of an accomplice, whose motivation to testify is suspect because the person would have a natural self-interest in focusing the blame on the defendant. *Id.* at 694; *State v. Berney,* 378 N.W.2d 915, 918 (Iowa 1985).

The State agrees that Bryan Teeters was an accomplice in the bombing of Kouris's residence. Therefore, we turn our attention to determining whether Bryan Teeters' testimony is sufficiently corroborated by other evidence which tends to connect Larsen with the commission of arson in the first degree. We conclude sufficient corrobo-

rating evidence exists in the record to support Larsen's conviction.

The existence of corroborative evidence is a question of law for the court, but its sufficiency is ordinarily a question of fact for the jury. It need not be strong. Any corroborative evidence which tends to connect the accused with the commission of the crime and thereby supports the credibility of the accomplice is sufficient. Such evidence may be direct or circumstantial. It must be inculpatory but need not be entirely inconsistent with innocence. *State v. Vesey,* 241 N.W.2d 888, 890 (Iowa 1976). Corroboration need not confirm every material fact of the accomplice's testimony. *State v. Brown,* 397 N.W.2d 689, 694–95 (Iowa 1986); *State v. Powell,* 400 N.W.2d 562, 564 (Iowa 1987).

Here, the record reflects that Bryan Teeters' testimony and credibility are sufficiently supported by several witnesses, including Martin Waters, Officer Lyle Brown, Investigator Leland Bennett, Investigator Dan Fridley, and Jerry Peeler. The testimony of these witnesses, taken together, more than adequately satisfies the standard of proof required to corroborate an accomplice's testimony.

Next, Larsen argues the trial court abused its discretion in admitting subsequent bad act evidence regarding his involvement in a shooting two months after the arson occurrence. The admissibility of evidence is within the discretion of the trial court. *State v. Brewer,* 247 N.W.2d 205, 214 (Iowa 1976). On appeal, the trial court's ruling on the admissibility of evidence will be reversed only upon a showing of an abuse of discretion. *Id.* at 214.; *State v. Butler,* 415 N.W.2d 634, 636 (Iowa 1987). In order to show an abuse of discretion, one generally must show that the court exercised its discretion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Blackwell,* 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor,* 132 Vt. 603, 326 A.2d 138, 140 (1974)).

Iowa Rule of Evidence 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of

a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"The purposes listed in the rule are not exclusive." *State v. Plaster,* 424 N.W.2d 226, 228 (Iowa 1988) (citing *State v. Barrett,* 401 N.W.2d 184, 187 (Iowa 1987)).

> The key is "whether the challenged evidence is relevant and material to some legitimate issue other than a general propensity to commit wrongful acts." *Barrett,* 401 N.W.2d at 187. [Citation omitted.] If the evidence meets this litmus test, "it is prima facie admissible, notwithstanding its tendency to demonstrate the accused's bad character." *Barrett,* 401 N.W.2d at 187. In determining whether evidence of "other crimes, wrongs, or acts" is admissible, the trial court must employ a two-step analysis. The court must first decide whether the evidence is relevant. If the court finds that it is, the court must then decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *State v. Kern,* 392 N.W.2d 134, 136 (Iowa 1986); Iowa R.Evid. 403. A positive finding as to the second step overcomes the evidence's prima facie admissibility. *Barrett,* 401 N.W.2d at 187 n. 2.

*Plaster,* 424 N.W.2d at 229.

> Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R.Evid. 401. The test is "whether a reasonable [person] might believe the probability of the truth of the consequential fact to be different if he knew of the proffered evidence." [Citation omitted.]

*Id.*

 In the present case, the State contended the evidence concerning the shooting at Jerry Peeler's residence was relevant to establish the defendant's intent to silence Jerry after Jerry threatened to tell authorities his knowledge about the bombing. More specifically, the State argues that the evidence presented through Bryan Teeters implicated Larsen as a coconspirator with Bryan, Charles Teeter, and Larsen's brother, Chris. The State asserts that Charles constructed the bomb, Bryan and Chris served as look-outs and driver of the getaway car, and Larsen planted and lit the bomb.

With this background, the State argues that although Peeler had only threatened to expose one of the conspirators (Charles) and was possibly only aware of Charles's involvement in the bombing, the result of an investigation of Charles might well have led to exposure of the entire bombing conspiracy. The State contends that in this respect the shooting of Peeler and his wife and stepbrother by Larsen and Bryan Teeter is properly viewed as an act in furtherance of the ongoing conspiracy to bomb Kouris's house without being prosecuted.

 One recognized exception to the general rule that evidence to show commission of crimes other than the one with which a defendant is charged is inadmissible permits evidence of other crimes for the purpose of establishing a common scheme or system of criminal activity. *State v. Johnson,* 237 N.W.2d 819, 820 (Iowa 1976). This exception permits evidence of overt acts committed in furtherance of a conspiracy when there is evidence of a conspiracy, whether conspiracy is charged or not. *Id.* In order to qualify under this exception, the State must present clear proof that (1) the defendant was culpable in the other acts in question and (2) the other offenses must be reasonably similar to the act on which the prosecution is based. *Id.* at 820–21 (citing *State v. Fetters,* 202 N.W.2d 84, 92 (Iowa 1972).

 We agree with the State that the evidence regarding the subsequent shooting is probative on the issue of Larsen's involvement in the bombing episode giving rise to the charge of first-degree arson. Once evidence of other crimes is deemed relevant, the trial court must determine, within its discretion, whether the danger of unfair prejudice created by the admission of the evidence substantially outweighs its probative value. *State v. Cott,* 283 N.W.2d 324, 329 (Iowa 1979).

"Unfair prejudice" has been defined as "an undue tendency to suggest decisions on an improper basis, commonly though not necessarily, an emotional one." *Plaster*, 424 N.W.2d at 231.

As applied to other-crimes evidence, one commentator suggests

balancing, on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the degree to which the jury will probably be roused by the evidence to over-mastering hostility.

*Id.* at 232 (citing *McCormick on Evidence* § 190, at 453 (E. Cleary 2d ed. 1972)).

Here, the shooting evidence, if believed by the jury, provides strong circumstantial evidence of Larsen's involvement in the arson. It is important to the case because no direct physical evidence exists specifically tying Larsen to the bombing, such as fingerprints, footprints, or identification by a nonaccomplice. Although the jury could have convicted Larsen based solely on accomplice Bryan Teeters' corroborated testimony about the arson itself, Bryan's testimony about the shooting, corroborated by Peeler's testimony, provides further circumstantial evidence of the conspiracy itself and of Larsen's identity as one of the arsonists. *See State v. Veverka*, 271 N.W.2d 744, 747 (Iowa 1978) (since there are seldom witnesses to arson, it must be proved by circumstantial evidence).

■ One factor often considered by courts in balancing the probative value of evidence against its potential for unfair prejudice is the comparative enormity of the charged and uncharged crimes. *United States v. Brooks*, 670 F.2d 625, 629 (5th Cir.1982). This factor is applicable to the present case since the uncharged crime involved the attempted murder of three people, a very serious and reprehensible crime. The potential prejudicial effect is neutralized by the equally reprehensible nature of the charged crime—the nighttime bombing of a house occupied by the prosecutor and his wife. Here, the uncharged crime "did not involve conduct any more sensational or disturbing" than the charged crime, so as to warrant exclusion under Iowa Rule of Evidence 403. *See United States v. Roldan–Zapata*, 916 F.2d 795, 804 (2nd Cir.1990).

The danger of unfair prejudice was further diminished in the instant case by jury instruction eighteen, which provided:

Evidence has been received about other alleged transactions involving the defendant. The defendant is not on trial for those transactions. However, the law permits such evidence when the other transactions and the crime charged form an inseparable part of the whole act. If they are so closely associated with each other that they form a continuous transaction the other transaction may reasonably help to establish the crime charged.

The jury is presumed to have followed this instruction. *State v. Simpson*, 438 N.W.2d 20, 21 (Iowa App.1989).

Our close inspection of the record convinces us that the district court did not abuse its discretion under Iowa Rule of Evidence 404(b) in admitting the evidence of the subsequent shootings to prove motive, identity, plan (continuing conspiracy), or knowledge. Nor did the district court abuse its discretion under Iowa Rule of Evidence 403 by effectively determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

Accordingly, we affirm the defendant's conviction and sentence for first-degree arson.

**AFFIRMED.**