# IN THE COURT OF APPEALS OF IOWA

No. 15-1580
Filed December 21, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**KEVIN EUGENE JOHNSON,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Steven J. Andreasen, Judge.

Defendant appeals his convictions for three counts of burglary in the third degree; one count of theft in the first degree; and one count of theft in the second degree. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**.

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., Tabor, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**BLANE, Senior Judge.**

The State charged defendant Kevin Johnson with Count 1: burglary in the third degree of a Family Dollar store on March 17, 2014; Count 2: burglary in the third degree of a Jehovah's Witness Church on March 17, 2014; Count 3: burglary in the third degree of the L & K Laundry on January 24, 2014; Count 4: theft in the first degree for property taken at the L & K Laundry; and Count 5: theft in the second degree for property taken at the Family Dollar. The State also alleged Johnson was subject to the habitual offender enhancement on each count. On December 30, 2014, Johnson stipulated he had been previously convicted of at least two felonies and was subject to the habitual offender enhancement.

Johnson waived a jury, and a trial to the court commenced on January 6, 2015. On May 24, 2015, the trial court filed its findings of fact, conclusions of law and verdict—guilty on all counts as charged with the habitual offender enhancement. Johnson was sentenced on September 18, 2015, to imprisonment for a period not to exceed fifteen years on each count. Count 1 was ordered to be served consecutively to Count 3. Johnson filed a timely notice of appeal on September 21, 2015. On appeal, he claims (1) the convictions cannot stand as the testimony of the accomplice was not corroborated, and (2) the trial court abused its discretion in sentencing him to consecutive terms of imprisonment.

**I. Corroboration Issue.**

When the defendant challenges the trial court's determination that corroborating evidence existed to warrant submission of the case to the trier of fact, our review is for correction of errors of law. *See* Iowa R. App. P. 6.907.

**A. Legal standard for corroboration of accomplice testimony.**

Iowa Rule of Criminal Procedure 2.21(3) provides that a person may not be convicted "upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." Corroborative evidence need not be strong nor confirm every material fact. *State v. Berney*, 378 N.W.2d 915, 918 (Iowa 1985). And it need not confirm all the elements of the crime charged. *State v. Cuevas*, 282 N.W.2d 74, 78 (Iowa 1979). Such evidence may be direct or circumstantial. *State v. Bugely*, 562 N.W.2d 173, 176 (Iowa 1997). Any corroborative evidence tending to connect the defendant to the commission of the crime supports the credibility of the accomplice and is sufficient. *State v. Vesey*, 241 N.W.2d 888, 890 (Iowa 1976). The only requirement is that the accomplice's testimony be supported in some material fact tending to connect the defendant to the crime charged. *State v. Aldape*, 307 N.W.2d 32, 41 (Iowa 1981). It must be inculpatory but need not be entirely inconsistent with innocence. *State v. Larson*, 512 N.W.2d 803, 806 (Iowa Ct. App. 1993).

The corroboration requirement serves two purposes: "First, it independently tends to connect defendant to the crime. Second, it supports the

credibility of an accomplice whose motives are clearly suspect because of the accomplice's self-interest in focusing blame on the defendant." *State v. Brown*, 397 N.W.2d 689, 694 (Iowa 1986). The existence of corroborative evidence is a question of law for the court, but its sufficiency is a question of fact for the fact finder. *Bugely*, 562 N.W.2d at 176. Each case must be governed by its own circumstances, and evidence that merely raises a suspicion the accused is the guilty party is not sufficiently corroborative of the testimony of an accomplice to warrant a conviction. *State v. Gillespie*, 503 N.W.2d 612, 617 (Iowa Ct. App. 1993).

When evaluating sufficiency challenges, we do not resolve conflicts in the evidence, assess the credibility of witnesses, or weigh evidence. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). Rather, we view all the evidence in the light most favorable to the State, even if contradicted, and indulge in every legitimate inference that may be fairly and reasonably deduced from this evidence. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980). The fact-finder decides which evidence to accept or reject. *State v. Williams,* 695 N.W.2d 23, 28 (Iowa 2005).

### B. Discussion.

At trial Johnson did not dispute that the crimes had occurred but denied his involvement. Evidence produced by the State at trial that Johnson was involved in the burglaries and thefts was substantially based on the testimony of an accomplice, Jimmy. Johnson claims that Jimmy's testimony was not corroborated as required by rule 2.21(3) and, therefore, the evidence was

insufficient to convict him, his convictions must be reversed, and the case must be remanded for dismissal.

In its written findings, the trial court set out the evidence establishing the burglaries and thefts occurred, as well as the evidence the court found corroborated the accomplice's testimony that Johnson participated in these crimes. Jimmy testified that he and Johnson committed all three burglaries, and Johnson does not challenge the trial court's findings of fact as not being supported by evidence.

Since Johnson does not challenge the crimes occurred, we find it only necessary to look at the district court's findings as to evidence of corroboration connecting him to these crimes and determine if it meets the legal requirement to establish defendant's guilt.

**C. Burglaries and investigation.**

*1. L & K Laundry.* During the night of January 24, 2014, L & K Laundry in Sioux City was burglarized. When the laundry opened for business in the morning, the owner discovered the break-in and reported it to the Sioux City police. In investigating, police observed damage to the back door and a bar/brace inside the door indicating the door had been pried open. Additionally, officers found that the phone line on the outside of the building and wires connected to two alarms inside the building were cut. A safe inside the laundry office area had been moved, pried open, and the contents stolen. An identification technician processed the laundromat. No fingerprints were discovered; however, a partial shoe print consistent with Nike Shox shoes was

obtained from on top of the safe.  As of March 17, 2014, no arrests had been made in regard to this burglary.

***2. Jehovah's Witness Church.***  In the early morning hours of March 17, 2014, sometime before the burglary of the Family Dollar store, there was a break-in at the Jehovah's Witness Church in Sioux City, Iowa.  At approximately 4:30 a.m., Tom Callender, a volunteer minister at the church, received a phone call at his home from Midwest Alarm System informing him the signal from the church had been lost and Midwest Alarm had been unable to restore that signal. Because the alarm company was unable to determine any specific cause for the lost signal, Callender did not immediately contact the police.

At approximately 9:00 a.m., another church member discovered the church break-in, and the police were called.  Investigation disclosed that locked cabinets and desk drawers were broken open and appeared to be ransacked. An alarm was broken off of a wall.  On the outside of the building, the hinge pins in a side door had been removed and there were pry marks to the door.  Security lights near that side door and on a garage were broken.  Phone lines that were also used for the Midwest Alarm system had been cut.  A binder and paperwork were missing from one of the offices, the garage door opener was missing from a storage room inside the church, and a lawn mower blade was missing from inside the garage.

***3. The Family Dollar Store.***  At 5:12 a.m. on March 17, 2014, Sioux City police were notified the door to the Family Dollar store was open and noise was coming from inside.  Due to the significance of the evidence surrounding this crime, the district court's findings are set out here in detail:

Officer Noltze arrived first and parked on the east side of the Family Dollar Store where he observed the open door. . . .

Officers Fleckenstein and Hansen arrived just after Officer Noltze. As Officers Fleckenstein and Hansen pulled in on the west side of the building, they both observed two individuals wearing dark clothing and appearing to be carrying something running out of the front door of the store on the south side of the building, then running west and then north around the building, and then going down into a ravine that ran approximately east-west to the rear or north of the store. . . . Officer Noltze crossed a bridge and parked on the north side of the ravine.

From his position on the north side of the ravine, Officer Fleckenstein could hear noises down in the ravine under the bridge; however, he could not see any persons because it was still dark at that time of the day. He then called his K-9 Eik and gave a standard verbal K-9 warning to the persons under the bridge. Immediately after giving this warning, one of the persons began running in a northwesterly direction within the ravine; however, Officer Fleckenstein and K-9 Eik were unable to get down into the ravine and catch up to this person due to the darkness, the difficult terrain, and the brush or thickets growing in the bank of the ravine.

Officer Fleckenstein and K-9 Eik then returned to the bridge, and he gave another K-9 warning to the other person who was still hiding in the ravine. Officer Fleckenstein then found an area for Eik to go down into the ravine, and K-9 Eik shortly thereafter apprehended that person. The person apprehended under the bridge was Jimmy . . . .

After Jimmy . . . was apprehended and taken into custody, Officer Fleckenstein located under the bridge cash in an ATM box in the amount of $4,380, two plastic money bags of cash in the approximate amount of $1,000, and a duffel bag containing a hammer, pry bar, and a lawn mower blade which was later determined to be consistent with the lawn mower blade missing from the garage at the Jehovah's Witnesses Church. Officers Noll and Harstad also responded to the call and assisted in the investigation of the Family Dollar Store. Within the brush leading down into the ravine from the store, officers found a black mask and white cotton glove that had been worn by Jimmy . . . . They also located wire cutters outside the Family Dollar Store which were believed to have fallen out of a hole in the duffel bag.

. . . While Officers Harstad and Reed were investigating the store, the store manager, Cheryl Kollbaum, was called, and she walked around the inside and outside of the building with the officers. . . . They noted damage to the electrical system and cut phone lines in a back room area of the store and damage to a heat sensor on the ceiling . . . (Jimmy . . . testified that he thought the heat sensor was a camera). Directly beneath the heat sensor, they

observed a footstool with a shoe print. . . . [Kollbaum] also identified the cash bags and ATM box that were located underneath the bridge.

After Officer Noltze cleared the inside of the store and Officers Harstad and Reed arrived at the store, Officer Noltze then used his K-9 in an effort to "track" the other person who had run away from under the bridge. Officer Noltze and his K-9 tracked that person in the ravine and through underground culverts. Officer Noltze and his K-9 lost the scent of the person on the street level above the culvert in the area of South Rustin Street.

. . . .

During this time, Officer Finken was dispatched to the Regency Trailer Park located northeast from the Family Dollar Store in response to a report of a suspicious van parked in front of an abandoned trailer. The van was registered in the name of Theresa Aguirre who had also just reported the van as being stolen. It was later discovered that Ms. Aguirre and Jimmy . . . were romantically involved and were the parents of the same children. Officer Finken searched the inside of the van and located insurance cards in the name of Jimmy . . . . Officer Finken also found a bag with paperwork and a garage door opener which were later identified as the paperwork and garage door opener that were missing from the Jehovah's Witnesses Church.

As noted above, Carmen Gonzalez-Castro also testified at trial. Ms. Gonzalez testified that in the early morning hours of March 17, Defendant called her asking for a ride because his vehicle had broken down. Ms. Gonzalez further testified that she eventually agreed and picked up Defendant at a location just north of the area where the culvert passes under South Rustin Street. Ms. Gonzalez testified that Defendant was alone and got into the backseat of her van. She further testified that Defendant was wearing dark clothing, was muddy, and sounded and appeared to be out of breath. According to Ms. Gonzalez, Defendant asked her to drop him off at an apartment building located behind his residence, which she did. According to Ms. Gonzalez, she noticed as Defendant got out of her vehicle that his back left pant leg was torn, and his leg appeared to be bleeding.

Ms. Gonzalez further testified that the next morning, March 18, her children noticed clothing items in the rear storage area of the van, specifically a pair of muddy Nike Shox tennis shoes, a pair of white cotton gloves, and a black or gray mask. Ms. Gonzalez and Theresa Aguirre then put these items in a plastic bag and took them to Defendant's residence and left them with Defendant's spouse, Sherri Johnson. They then contacted the Sioux City Police. Officer Martinez subsequently retrieved and seized the bag of items which had been placed by Sherri Johnson in the backyard of the residence.

Prior to these events on March 18, Sherri Johnson had already become aware of the burglaries and she suspected involvement of Defendant. In particular, during his interview by Detective Sanders on the 17th, Jimmy . . . stated that Defendant was the second person involved and not Jimmy Merchant as he previously stated. Detective Sanders requested and obtained a warrant to search Defendant's residence, and such search was executed while Sherri Johnson was present on March 17. No items were located at that time. Based on the information that had been obtained, Detective Sanders also attempted to contact the Defendant and eventually spoke to him by phone. Defendant told Detective Sanders words to the effect that they would not catch him.

[Identification] Tech Roach processed evidence obtained at . . . the Family Dollar. No fingerprints were discovered; however, a partial shoe print was taken . . . from the footstool at the Family Dollar. [The] shoe print [was] consistent or otherwise similar in size and pattern to Defendant's Nike Shox shoes.

**D. Corroboration.**

*1. Family Dollar.* The district court recognized the accomplice's testimony had to be corroborated to find defendant guilty. Upon our review, we conclude the trial court did not commit legal error in finding corroborating evidence and, as a result, finding Johnson guilty of the Family Dollar burglary. The trial court found the accomplice Jimmy was a credible witness. Jimmy was caught shortly after being seen running out of Family Dollar with another man. Items from the church burglary were found in a vehicle registered to Theresa Aguirre, Jimmy's significant other, parked not far from the Family Dollar store.

More significant, when the police arrived at the Family Dollar, officers observed two men running out of the store wearing dark clothing, and the officers noted the respective sizes of the individuals as they ran into a ravine. The descriptions fit both Jimmy and Johnson. Using a K-9 police dog, Jimmy was captured, and the other person was tracked through the ravine until the K-9 lost

the scent near South Rustin Street. Within the brush leading down into the ravine from the store, officers found a black mask and white cotton glove that had been worn by Jimmy.

Sometime around 7:00 a.m. on March 17, Johnson called Carmen Gonzalez-Castro asking for a ride because his vehicle had broken down. She agreed and picked Johnson up at a location just north of the area where the culvert passes under South Rustin Street. He was alone, and he got into the backseat of her van. He was wearing dark clothing, was muddy, and sounded and appeared to be out of breath. Johnson asked her to drop him off at an apartment building located behind his residence, which she did. As he got out of her vehicle, she noticed that his back left pant leg was torn and his leg appeared to be bleeding.

The next morning Gonzalez-Castro found clothing items in the rear storage area of her van, specifically a pair of muddy Nike Shox shoes, a pair of white cotton gloves, and a black or gray mask. She and Aguirre then put these items in a plastic bag and took them to Johnson's residence and left them with Johnson's spouse. Officer Martinez later retrieved and seized the bag of items, which Sherri Johnson had placed in the backyard of their residence.

The white gloves found in the ravine worn by Jimmy were consistent with those found in the van and the type used at Johnson's employment. The Nike Shox shoes were consistent in size and sole configuration with the shoe print taken from the stool inside the Family Dollar. The trial court acknowledged the "partial print does not have the same unique characteristics such as a fingerprint connecting Defendant and only Defendant to the crime; however, it is

circumstantial evidence pointing to his involvement and supporting the testimony of Jimmy . . . ."

Johnson argues the failure to establish definitively that the shoe print was made by his Nike Shox shoes defeats corroboration. We do not agree. This might be true if the State was relying on this evidence alone to prove Johnson guilty of the burglary. *See State v. Mark*, 286 N.W.2d 396, 409 (Iowa 1979) ("In order to establish a proper foundational connection between defendant and the crime scene shoe prints, it was necessary that the State establish that similarities existed between the distinctive characteristics exhibited by defendant and the characteristics exhibited by the maker of the crime scene shoe prints."). Here, the State is only relying on this as evidence of corroboration to satisfy the rule, and it only needs to *tend to* connect Johnson to the crime. *See Bugely*, 562 N.W.2d at 176-77 ("The existence of a second, small set of footprints at these burglaries confirms that a second person was involved. These prints, which match those present at [the first] residence, show the same person who committed the [first] burglary was present at the [second] burglar[y]."). In *Bugely*, the defendant's shoes were not found and were not available for comparison to the shoe prints. The shoe evidence was still deemed sufficient corroboration of the accomplice's testimony to justify submission to the jury. The defendant's shoes found by Gonzalez-Castro, together with the other items and circumstances of her giving defendant a ride at a location near where the police K-9 lost the scent within the time frame of his fleeing the Family Dollar, sufficiently connected defendant to the Family Dollar burglary as to corroborate Jimmy's testimony.

In addition to the foregoing, the State presented evidence that Johnson did not return to his employment on or after March 17. Further, Detective Sanders called Johnson on March 17 using Jimmy's cellphone. Sanders testified, "I told him that I needed to speak with him at the police department. Basically, he said that he wasn't going to come in. Then I told him that I would issue warrants for his arrest, and his comments were basically, 'Good luck trying to find me.'" Johnson again argues this evidence does not establish his guilt. This evidence alone would not be sufficient corroboration. But our supreme court has recognized there may be a combination of circumstances, singularly unpersuasive but in totality sufficient, to entitle the trier of fact to conclude that the accomplice's testimony has been corroborated in accordance with the statutory requirement. *See State v. Willman*, 244 N.W.2d 314, 315 (Iowa 1976). And there is a difference in the quantum of proof of identity necessary for evidence being used as substantive proof of guilt as opposed to evidence being used to corroborate an accomplice. *State v. Gates*, 67 N.W.2d 579, 583 (Iowa 1954). Rather, "inculpatory facts in testimony of an accomplice or accomplices were corroborated by evidence showing the defendant's association with the accomplice or accomplices, proximity to the crime scene and additional suspicious circumstances suggestive of the defendant's participation in the offense." *Vesey*, 241 N.W.2d at 891. The evidence of corroboration as found by the trial court was sufficient as to the Family Dollar store burglary to support the finding of guilt. The district court is therefore to be affirmed as to Counts 1 and 5.

***2. Jehovah's Witness Church.*** The trial court initially noted that Jimmy was involved in both the burglary at Family Dollar and the burglary at the

Jehovah's Witness Church. The trial court also found the extent of damage and other observations made at the church suggested that at least one other person was involved in the church break-in with Jimmy. Based on these circumstances, the trial court found the same corroborating evidence proving Johnson's involvement in the Family Dollar burglary indirectly corroborated the testimony of Jimmy that Johnson was the other person involved in the burglary of the church.

We cannot agree when these findings are evaluated in light of the *Vesey* case. Corroboration of testimony that is not inculpatory is not corroboration of a material fact tending to connect the accused with the crime. *Id.* The extent of damage may indicate that more than one person burglarized the church, but it does not place Johnson there.

The trial court also found that the facts and circumstances of the Family Dollar burglary were strikingly similar to the facts and circumstances of the church burglary to be considered evidence identifying Johnson as one of the perpetrators of the church burglary. We cannot agree. The trial court acknowledged that similarity between two crimes must be so strikingly similar or of a unique nature that involvement in the prior crime makes it more likely that defendant was involved in the present crime. *See State v. Butler,* 415 N.W.2d 634, 636 (Iowa 1987) ("When prior crimes evidence is offered to prove identity, 'the test of relevancy is whether the prior crime and the crime for which defendant is being charged reveal circumstances that are 'strikingly similar' or of a 'unique nature,' such that involvement in the prior crime makes it more likely that defendant was involved in the present crime.'"). The circumstances of the two burglaries are not so similar or unique so as to establish Johnson's

participation in the Family Dollar proves he also participated in the church burglary.

The trial court also found that Jimmy used Aguirre's van to drive from the church to the area of the Family Dollar and, therefore, it was reasonable to conclude that Johnson was with Jimmy at the church since no means of transportation explained how Johnson got to the Family Dollar. The trial court stated:

> To conclude otherwise would mean that Jimmy . . . either accomplished the church burglary by himself and then picked up Defendant in the middle of the night on his way to the Family Dollar; or, that Jimmy . . . and a third person committed the burglary at the church, then that third person left or was dropped off somewhere by Jimmy . . . before [he] then picked up Defendant to go to the Family Dollar. These scenarios are certainly possible; however, they are not likely or reasonable.

No corroborating evidence was found to indicate Johnson was in the van or at the church. The trial court found the scenarios were only possible. Evidence which merely raises a suspicion the accused is the guilty party is not sufficiently corroborative of the testimony of an accomplice to warrant a conviction. *Gillespie*, 503 N.W.2d at 617.

The sole connection between Johnson and the burglary of the church is the temporal connection—the church burglary occurring within hours of the Family Dollar burglary. Using that link, the court stated, "Based on these circumstances, the same corroborating evidence proving Defendant's involvement in the Family Dollar burglary indirectly corroborates the testimony of Jimmy . . . that Defendant was the other person involved in the burglary of the church." The accomplice's testimony must be supported in some material fact

tending to connect the defendant to the crime charged. *See Aldape*, 307 N.W.2d at 41. The temporal connection does not eliminate the need to connect Johnson to the particular charge. *Bugely*, 562 N.W.2d at 176-77.

Since the State did not present evidence to corroborate Jimmy's testimony that Johnson was involved in the church burglary, the trial court erred as a matter of law in holding there was corroboration. Johnson's conviction as to Count 2 must be reversed and the case remanded with direction to dismiss this count.

*3. L & K Laundry.* In regard to Johnson's involvement in the L & K Laundry burglary, the trial court initially concluded the facts and circumstances of the burglaries at the Jehovah's Witness Church and Family Dollar were strikingly similar to this burglary, which occurred within the same general time frame as the other two burglaries. Additionally, the court relied on the fact that Jimmy was involved in all three burglaries and its previous conclusion Johnson had committed the church and Family Dollar burglaries with Jimmy.

As discussed above, the facts and circumstances of the burglaries are not so strikingly similar or unique that such a connection can be made. The laundry burglary was two months prior to the church and Family Dollar burglaries. As we have already held above, the State did not present adequate corroborative evidence to connect the defendant to the Jehovah's Witness Church burglary.

The trial court found, even ignoring the evidence of the other burglaries, that the damage to the laundry, including the moving and forced entry into the safe, proved that Jimmy did not act alone. Again, evidence that someone must have helped with the burglary is still not corroborative evidence connecting Johnson to the crime. The trial court also noted that Johnson was familiar with

the laundry, its layout, and the owner's practice of having cash available to cash customers' payroll checks. Additionally, Johnson was at the laundry the day before the burglary. None of these findings place him at the laundry at the time of the burglary. Moreover, no evidence of this burglary (cash, jewelry, or cigarettes) was discovered during the search of Johnson's residence.

Finally, the trial court found the partial shoe print identified on the top of the safe was consistent with the shoe print found at Family Dollar and Johnson's Nike Shox shoes. But the trial court recognized the "partial print does not have the same unique characteristics such as a fingerprint connecting Defendant and only Defendant to the crime." The trial court went on to state that this was "circumstantial evidence pointing to [Johnson's] involvement and supporting the testimony of Jimmy." The trial court thus concluded "that Jimmy's testimony, along with this other evidence corroborating such testimony and linking Defendant to the crime, proves [Johnson's] guilt beyond a reasonable doubt."

We agree with the district court that the Nike Shox shoe print, by itself, does not connect Johnson to the crime. But when considered with the other evidence of the similar shoe print found at the Family Dollar store and the corroborative evidence connecting Johnson to the Family Dollar burglary, this is sufficient corroborative evidence to tie him to the L & K Laundry burglary. There was no legal error as to Counts 3 and 4, and those verdicts and judgments are affirmed.

**II. Consecutive Sentences.**

"We review sentencing decisions for an abuse of discretion or defect in the sentencing procedure." *State v. Hopkins*, 860 N.W.2d 550, 553 (Iowa 2015).

"An abuse of discretion will only be found when a court acts on grounds clearly untenable or to an extent clearly unreasonable." *Id.*

A sentencing court is required to "state on the record its reason for selecting the particular sentence." Iowa R. Crim. P. 2.23(3)(d); *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). Sentencing courts are encouraged to "give more detailed reasons for a sentence specific to the individual defendant and crimes." *State v. Hill*, 878 N.W.2d 269, 275 (Iowa 2016). Further, courts "should also explicitly state the reasons for imposing a consecutive sentence, although in doing so the court may rely on the same reasons for imposing a sentence of incarceration." *Id.* at 275. Here, the trial court imposed consecutive sentences for Count 1, the burglary of the Family Dollar store, and Count 3, the burglary of the L & K Laundry. Johnson contends the trial judge failed to articulate on the record the reasons for imposing these consecutive sentences.

Upon our review of the record, we find the trial court met the requirements of rule 2.23(3)(d) and adequately stated not only the reasons for imposing prison sentences, but also consecutive sentences. We find no error or reason to remand the case for resentencing. Except for Count 2, the trial court's sentences should be affirmed.

**IV. Conclusion.**

The convictions and sentences in Counts 1, 3, 4 and 5 are affirmed. The conviction is reversed as to Count 2, and the case is remanded to the district court for dismissal of Count 2 for the reasons set forth in this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**