# IN THE COURT OF APPEALS OF IOWA

No. 15-1984
Filed February 8, 2017

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**THOMAS AARON INGRAM,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Fremont County, Gregory W. Steensland, Judge.

      Thomas Ingram appeals from his convictions and sentences for sexual abuse in the third degree, assault, and lascivious acts with a child following a jury trial. **AFFIRMED.**

      Mark C. Smith, State Appellate Defender, and Patricia A. Reynolds, Assistant Appellate Defender, for appellant.

      Thomas J. Miller, Attorney General, and Kevin Cmelik and Kristin A. Guddall (until withdrawal), Assistant Attorneys General, for appellee.

      Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Thomas Ingram appeals from his convictions and sentences for sexual abuse in the third degree, assault, and lascivious acts with a child following a jury trial. He argues the district court abused its discretion by admitting the child victim's diary into evidence and his trial counsel rendered ineffective assistance in failing to object to impermissible vouching testimony by the expert witness. Upon our review, we affirm.

## I.    Background Facts and Proceedings

In September 2014, the State filed a trial information charging Ingram with two counts of sexual abuse in the third degree, two counts of lascivious acts with a child, and two counts of indecent contact with a child, stemming from allegations Ingram sexually abused his twelve-year-old step-daughter on July 11 and August 29, 2014. Prior to trial, the State dismissed the two counts of indecent contact with a child.

In September 2015, a jury convicted Ingram of one count of sexual abuse in the third degree, a class "C" felony, in violation of Iowa Code section 709.4(1)(a) (2014), for conduct occurring on July 11; one count of assault (a lesser-included offense of third-degree sexual abuse), a simple misdemeanor, in violation of section 708.2(6), regarding conduct occurring on August 29; and lascivious acts with a child, a class "D" felony, in violation of section 709.8(2)(b), concerning conduct occurring on July 11. The jury found Ingram not guilty of lascivious acts with a child for conduct occurring on August 29.

In October, the district court entered judgment of conviction and sentenced Ingram to indeterminate terms of imprisonment for no more than ten

years on the sexual-abuse charge, no more than five years on the charge of lascivious acts with a child, and not to exceed thirty days in jail for the assault charge, with credit for time served. Ingram appeals.

## II. Scope and Standard of Review

We review a district court's evidentiary rulings for an abuse of discretion. *State v. Neiderbach*, 837 N.W.2d 180, 190 (Iowa 2013). An abuse of discretion occurs "[w]hen the district court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014). A ground or reason is untenable if it is "based on an erroneous application of the law or not supported by substantial evidence." *Id.* Even if there has been an abuse of discretion, we need not reverse if the inclusion or exclusion was harmless to the defendant. *State v. Reynolds*, 765 N.W.2d 283, 288 (Iowa 2009), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 (Iowa 2016). "An erroneous evidentiary ruling is harmless if it does not cause prejudice." *State v. Redmond*, 803 N.W.2d 112, 127 (Iowa 2011). "[U]nder [Iowa Rule of Evidence] 5.103(a) we presume prejudice—that is, a substantial right of the defendant is affected—and reverse unless the record affirmatively establishes otherwise." *State v. Sullivan*, 679 N.W.2d 19, 30 (Iowa 2004). Rulings on the admissibility of hearsay evidence are reviewed for correction of errors at law. *State v. Buenaventura*, 660 N.W.2d 38, 50 (Iowa 2003).

We review claims of ineffective assistance of counsel de novo because the claims implicate the defendant's Sixth Amendment right to counsel. *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015). Generally, we preserve

ineffective-assistance-of-counsel claims for possible postconviction-relief proceedings when a more thorough record can be developed and counsel is given an opportunity to explain his or her conduct. *State v. Biddle*, 652 N.W.2d 191, 203 (Iowa 2002). However, an ineffective-assistance claim may be raised and decided on direct appeal when the record is adequate to address the claim. Iowa Code § 814.7(2), (3).

### III. Analysis

#### A. Diary

Ingram claims the district court abused its discretion by admitting M.H.'s diary into evidence and the error was not harmless. The State contends error was not preserved on this issue. Anticipating the State's argument, Ingram alternatively claims his trial counsel rendered ineffective assistance in failing to object to the admission of the diary because it contained hearsay. *See* Iowa R. Evid. 5.802. Ingram also complains his trial counsel should have argued that, even if the evidence was relevant and admissible, the probative value was substantially outweighed by the danger of unfair prejudice. *See* Iowa R. Evid. 5.403.

Ingram has adequately raised this issue under the ineffective-assistance-of-counsel rubric. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) ("Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules."). The record is adequate to address Ingram's claims on direct appeal. *See* Iowa Code § 814.7(2), (3).

To succeed on a claim of ineffective assistance of counsel, Ingram must show by a preponderance of the evidence: "(1) his trial counsel failed to perform

an essential duty, and (2) this failure resulted in prejudice." *Thorndike*, 860 N.W.2d at 320 (quoting *State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012)); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Under the first prong, 'we measure counsel's performance against the standard of a reasonably competent practitioner.'" *Thorndike*, 860 N.W.2d at 320 (quoting *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012)). "Under the second prong, the [defendant] must establish that prejudice resulted from counsel's failure to perform an essential duty." *Id.* Failure to prove either prong is fatal to the claim. *See State v. Shanahan*, 712 N.W.2d 121, 142 (Iowa 2006). In examining Ingram's claims, we presume trial counsel performed their duties competently. *See Thorndike*, 860 N.W.2d at 320.

The State entered into evidence M.H.'s diary containing entries written by M.H. on July 10 and July 11, 2014. M.H. testified at trial that she wrote in her diary immediately after Ingram allegedly abused her. On July 10, M.H. wrote:

> Hey  I feel like shit.  I hate keeping secrets from my mom. Well I don't know how to put it but here it goes my stepdad has been raping me when my mom is at the stores and at the gas [stations].
> [A]nd I want to tell my mom but she loves him and she prbly thanks Im lying  Mom if ur reading this I'm srry I didn't tell you and I love you and Im not lying  I woldn't lyie about this shit yes I'm starting to cry.  What are we gonna do about this what if he does this to my sisters!!  There to [young] and I love theme and you and if u read this and dont leave him It's not gonna stop with me  Srry but its true.
> We can go to the farm or go some where eles I just want to leave  I dont know were but this what he said if me and your mom split up than your Aunt is gonna be the first I kill!!
> Im srry thats all I can say but I wanted to run away sence the first time he started touching me but I didn't cause I couldn't do that to you.  Can I run away Ill keep in touch with you I promise and that scare you acked about was from me cuting my self so are the other scares on my arms.

Some ppl in school know that i cutt my self  I just want to leave and get away and I Don't want to see him again the last time he raped me was a colp days ago  Iv been though a lot and Im still here I dont want to be but I'm not gonna do that yet!!!  Ill tell you befor I do Mom Im srry that you had to find out this way!!!  but I could tell you no other way!!!

On July 11, M.H. wrote: "When mom left he raped me again and I was on my <u>period</u>  he isn't gonna stop….ugh."

At trial, thirteen-year-old M.H. testified Ingram had "raped" her at least twice.  When asked to define rape, she stated, "He sexually touched me without me saying it was okay."  She testified he touched her vagina with his hands and his penis while she was in her bedroom and it was dark out.  She testified she told him to stop, and he put his hand over her mouth.  She testified it hurt her vagina.  She also testified her mother was at the gas station on one occasion and was sleeping the other time.  M.H. testified she could not tell her mother about the alleged abuse because her mother was in a relationship with Ingram and had just had a baby with him.  She also testified she did not tell her mother because she was scared and Ingram had threatened to kill her family, starting with her aunt, if M.H. told anyone.  She further testified she did not think anyone would believe her if she told.

Ingram contends his trial counsel should have objected to M.H.'s diary as hearsay.  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial . . . , offered in evidence to prove the truth of the matter asserted."  Iowa R. Evid. 5.801(c).  Hearsay is not admissible, unless it fits within one of the recognized exceptions.  Iowa R. Evid. 5.802; *Buenaventura*, 660 N.W.2d at 51.  Under Iowa Rule of Evidence 5.803(3), a hearsay statement is

admissible when it reflects on "the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)," but not when it's "a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." "The admission of such evidence under this exception is dependent upon the relevancy of the declarant's then existing state of mind, emotion, sensation, or physical condition." *State v. Newell*, 710 N.W.2d 6, 19 (Iowa 2006) (citing *Buenaventura*, 660 N.W.2d at 51).

M.H.'s diary entries demonstrate her "[t]hen existing mental, emotional, or physical condition" at the time she wrote them—that she was scared of Ingram, she feared for the safety of her family and herself, she wanted to run away from home to get away from Ingram, and she was afraid Ingram would sexually abuse her younger sisters. Her state of mind was relevant to show she did not consent to the sex act, but rather, "[t]he act [was] done by force or against [her] will." Iowa Code § 709.4(a).

Ingram also complains his trial counsel should have objected to M.H.'s diary as unfairly prejudicial. "Evidence which is not relevant is not admissible." Iowa R. Evid. 5.402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Iowa R. Evid. 5.403. Evidence is unfairly prejudicial if it "appeals to the jury's sympathies,

arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action [that] may cause a jury to base its decision on something other than the established propositions in the case." *State v. Henderson*, 696 N.W.2d 5, 10–11 (Iowa 2005) (citation omitted).

Ingram claims the diary was unfairly prejudicial because it was "an overly dramatic attempt to manipulate . . . M.H's mother" and contained "extremely prejudicial statements which resulted in an unfair verdict." The probative value of M.H.'s diary was not "substantially outweighed" by any unfair prejudice because it showed her dislike of the abuse and desire for the abuse to end, allowing the jury to conclude Ingram sexually abused her by force or against her will. *See* Iowa Code § 709.4(a). Furthermore, a victim's account of sexual abuse is not unfairly prejudicial simply because the nature of the crime itself is disturbing. *See State v. Putman*, No. 12-0022, 2013 WL 3456973, at *4 (Iowa Ct. App. July 10, 2013); *State v. Larsen*, 512 N.W.2d 803, 808 (Iowa Ct. App. 1993). Thus, Ingram's trial counsel did not render ineffective assistance in failing to object to the diary as hearsay or as unfairly prejudicial.

Moreover, Ingram has failed to show he was prejudiced by any failure of trial counsel to object to the admission of the diary on grounds of hearsay or unfair prejudice because the evidence was merely cumulative. *See State v. Enderle*, 745 N.W.2d 438, 441 (Iowa 2007); *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998); *see also Strickland*, 466 U.S. at 694 (holding that, in order to establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Accordingly, we do not find Ingram's trial counsel rendered ineffective assistance in failing to object to the admission of M.H.'s diary as hearsay or as unfairly prejudicial.

### B.    Vouching

Ingram claims the district court erred in allowing improper testimony by an expert witness vouching for the credibility of the child victim.  He also contends his trial counsel provided ineffective assistance in failing to object to all of the improper testimony and prejudice resulted.  The record is adequate to address Ingram's claim on direct appeal.  *See* Iowa Code § 814.7(2), (3).

Our supreme court has recently elaborated on what constitutes vouching for the credibility of a witness, both directly and indirectly.  *See Dudley*, 856 N.W.2d at 676–77; *State v. Brown*, 856 N.W.2d 685, 689 (Iowa 2014); *State v. Jaquez*, 856 N.W.2d 663, 665–66 (Iowa 2014).  The court has explained:

> Although we are committed to the liberal view on the admission of psychological evidence, we continue to hold expert testimony is not admissible merely to bolster credibility.  Our system of justice vests the jury with the function of evaluating a witness's credibility.  The reason for not allowing this testimony is that a witness's credibility "is not a 'fact in issue' subject to expert opinion."  Such opinions not only replace the jury's function in determining credibility, but the jury can employ this type of testimony as a direct comment on defendant's guilt or innocence.  Moreover, when an expert comments, directly or indirectly, on a witness's credibility, the expert is giving his or her scientific certainty stamp of approval on the testimony even though an expert cannot accurately opine when a witness is telling the truth.  In our system of justice, it is the jury's function to determine the credibility of a witness.

*Dudley*, 856 N.W.2d at 676–77 (citations omitted); *see also Brown*, 856 N.W.2d at 689; *Jaquez*, 856 N.W.2d at 665.

Ingram challenges statements made by an expert witness during the State's direct examination. On our review, we address each statement Ingram "claims as objectionable to determine whether the State crossed the line." *Dudley*, 856 N.W.2d at 678.

M.H. did not disclose the alleged abuse to her mother but instead sent a text message disclosing the allegations to Ingram's friend. At trial, M.H. testified she did not tell her mother about the alleged abuse because she was scared and Ingram had threatened to kill her family if she told anyone. M.H. stated she also did not tell her mother because her mother was in a relationship with Ingram and had recently given birth to his child. M.H. testified she did not know if anyone would believe her. M.H. acknowledged she initially denied the allegations of abuse when questioned by the police but later admitted them when the officer asked about the text messages M.H. had sent to Ingram's friend.

Meghan Jones, a mental-health therapist employed by Project Harmony, testified generally about child sexual abuse. She explained young children might delay disclosure because they are unable to fully understand the abuse. She also testified that older children—children ages eleven, twelve, or young teens— may not disclose abuse right away due to threats made by the abuser toward the child or other family members. She testified older children may also delay disclosure because the abuser threatens to tell others about the abuse and the victim feels horrific shame or feels responsible for it. Jones stated that sometimes the abuser is in a relationship with the child's caregiver and the child worries about causing stress to the caregiver, such as loss of child care, financial support, or other support. She testified it was "a pretty common dynamic" that

children would refrain from disclosing abuse because the child is worried his or her whole life might change. Jones testified a child does not often disclose the abuse to a nonoffending parent but instead often discloses the abuse to a teacher or a peer. Jones also stated children may initially deny any abuse occurred for various reasons, including fear or feeling overwhelmed by disclosure. She testified children also worry the person they tell will not believe them. Jones noted research, and not just experience, supported her testimony.

Ingram contends Jones's statements indirectly commented on M.H.'s credibility because the examples she gave were close to the facts in this case. At one point, Ingram's trial counsel objected to the expert's testimony, stating they were "getting beyond the *Dudley* language" and "making it specific to this case." The district court overruled the objection and permitted Jones to continue testifying generally about child sexual abuse. "We allow an expert witness to testify generally that victims of child abuse display certain demeanors." *Jaquez*, 856 N.W.2d at 666 (citing *Dudley*, 856 N.W.2d at 676; *State v. Gettier*, 438 N.W.2d 1, 4 (Iowa 1989)). "However, when an expert witness testifies a child's demeanor or symptoms are consistent with child abuse, the expert crosses that very thin line and indirectly vouches for the victim's credibility, thereby commenting on the defendant's guilt or innocence." *Id.*

Our courts have generally "permitted an expert witness to testify regarding the 'typical symptoms exhibited by a [victim of sexual abuse],'" why a "child's recollection of the events may seem inconsistent," and "why child[] victims may delay reporting their sexual abuse" because it can "assist the jury in understanding some of the seemingly unusual behavior child victims tend to

display." *Dudley*, 856 N.W.2d at 676–77 (citations omitted); *see also* Iowa R. Evid. 5.702 (permitting expert opinion testimony "if . . . specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue"). But courts should "reject expert testimony that either directly or indirectly renders an opinion on the credibility or truthfulness of a witness." *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986). Indeed, expert witnesses are prohibited from providing statistics suggesting children do not lie about sexual abuse. *Id.*; *see also State v. Tracy*, 482 N.W.2d 675, 678 (Iowa 1992).

Here, Jones discussed generally the symptoms or behaviors common to children who have experienced sexual abuse. She explained behaviors exhibited by both young children and young teens. She did not provide an expert opinion regarding "every significant purported and disputed fact" in this case "as being consistent with the statistics and reports." *State v. Pitsenbarger*, No. 14-0060, 2015 WL 1815989, at *8 (Iowa Ct. App. Apr. 22, 2015); *see also State v. Tjernagel*, No. 15-1519, 2017 WL 108291, at *7–8 (Iowa Ct. App. Jan. 11, 2017). She did not testify specifically regarding M.H., her statements or her demeanor, or any facts in this case. Although Jones's testimony may arguably have "walked the thin line between proper expert testimony and vouching for the credibility of the victim[,] [it] did not cross it." *State v. Lusk*, No. 15-1294, 2016 WL 4384672, at *4 (Iowa Ct. App. Aug. 17, 2016) (Danilson, C.J., concurring specially). The question of M.H.'s credibility was still left to the determination of the jury. Thus, the district court did not err in admitting, and trial counsel did not render ineffective assistance in failing to object to, the expert witness's challenged testimony. *See State v. Shanahan*, 712 N.W.2d at 138.

Accordingly, we affirm Ingram's convictions and sentences for sexual abuse in the third degree, assault, and lascivious acts with a child.

**AFFIRMED.**